UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

RONALD CAESAR,

                              Plaintiff,

                -against-

                                                    Civ. No.:  1:15-cv-08911 (NRB)

RIVERBAY CORPORATION, CLEVE
TAYLOR, and BERNARD CYLICH,

                              Defendants.
---------------------------------------------------------------x


### DEFENDANT RIVERBAY CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT


JACKSON LEWIS P.C.
44 SOUTH BROADWAY, 14TH FLOOR
WHITE PLAINS, NEW YORK  10601
(914) 872-8060
BY:    JOSEPH A. SACCOMANO, ESQ.
        ISAAC J. BURKER, ESQ.

*ATTORNEYS FOR DEFENDANT RIVERBAY CORPORATION*

## TABLE OF CONTENTS

**Page #**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    I.    Background Information Regarding Plaintiff's Employment With
        Riverbay. ...............................................................................................................3

    II.   Plaintiff's Salary Was Reduced After Riverbay Was Apprised Of A
        Budget Deficit. .......................................................................................................5

    III.  Plaintiff's Employment Was Terminated After Riverbay Learned That
        Plaintiff Was Performing Work For MSRE's Other Properties During
        Riverbay Work Time. .............................................................................................6

ARGUMENT ...........................................................................................................................9

            SUMMARY JUDGMENT MUST BE GRANTED BECAUSE
            THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND
            RIVERBAY IS ENTITLED TO JUDGMENT AS A MATTER OF
            LAW ...................................................................................................................9

POINT I     PLAINTIFF CANNOT ESTABLISH ANY OF HIS
            DISCRIMINATION CAUSES OF ACTION BECAUSE HE DID
            NOT SUFFER AN ADVERSE EMPLOYMENT ACTION UNDER
            CIRCUMSTANCES THAT GIVE RISE TO AN INFERENCE OF
            DISCRIMINATION. ...........................................................................................10

POINT II    PLAINTIFF'S RETALIATION CAUSES OF ACTION MUST BE
            DISMISSED BECAUSE PLAINTIFF CANNOT ESTABLISH A
            CAUSAL CONNECTION BETWEEN HIS PARTICIPATION IN
            ANY PROTECTED ACTIVITY AND ANY ADVERSE
            EMPLOYMENT ACTION. ..................................................................................18

POINT III   PLAINTIFF CANNOT ESTABLISH A CLAIM OF HOSTILE
            WORK ENVIRONMENT BECAUSE HE CANNOT SHOW THAT
            HE WAS MISTREATED AS A RESULT OF HIS MEMBERSHIP IN
            ANY PROTECTED GROUP. ...............................................................................23

POINT IV   PLAINTIFF CANNOT ESTABLISH HIS DEFAMATION *PER SE*
            CAUSE OF ACTION BECAUSE MR. TAYLOR'S STATEMENTS
            ARE PROTECTED BY THE COMMON-INTEREST PRIVILEGE. ..................26

POINT V    PLAINTIFF CANNOT ESTABLISH HIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CAUSE OF ACTION BECAUSE IT ARISES FROM THE SAME FACTS AS HIS DEFAMATION CAUSE OF ACTION. ...........................................................29

CONCLUSION......................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Abdu-Brisson v. Delta Air Lines, Inc.,
239 F.3d 456 (2d Cir. 2001)...................................................................................11

Allen v. Murray-Lazarus,
2012 U.S. App. LEXIS 3509 (2d Cir. Feb. 21, 2012) ...........................................11

Ascione v. Pfizer, Inc.,
312 F. Supp. 2d 572 (S.D.N.Y. 2004).....................................................................16

Bacchus v. N.Y. City Dept. of Ed.,
137 F. Supp. 3d 214 (E.D.N.Y. 2015) ....................................................................24

Ben-Levy v. Bloomberg,
518 Fed. Appx. 17 (2d Cir. 2013).....................................................................23, 25

Bennett v. Goord,
2008 U.S. App. LEXIS 24441 (2d Cir. 2008) ..................................................14, 27

Boise v. Boufford,
121 Fed. Appx. 890 (2d Cir. 2005).........................................................................18

Brancaleone v. Mesagna,
290 A.D.2d 467 (2d Dept. 2002) ............................................................................29

Brenner v. City of N.Y. Dep't of Educ.,
659 Fed. Appx. 52 (2d Dept. 2016) ........................................................................25

Brooks v. Anderson,
2007 N.Y. Misc. LEXIS 8561 (BX Sup. Dec. 31, 2007) ................................27, 29

Chin v. ABN-AMRO North America, Inc.,
463 F. Supp. 2d 294 (E.D.N.Y. 2006) ....................................................................14

Davenport v. City of White Plains,
2015 U.S. Dist. LEXIS 127751 (S.D.N.Y. July 8, 2015) .......................................18

Dister v. Continental Group, Inc.,
859 F.2d 1108 (2d Cir. 1988)..................................................................................10

Dotel v. Walmart Stores, Inc.,
627 Fed. Appx. 42 (2d Cir. 2016) ...........................................................................25

Fattoruso v. Hilton Grand Vacations Co.,
    525 F. App'x 26 (2d Cir. 2013) ...................................................................................19

Fisher v. Vassar College,
    114 F.3d 1332 (2d Cir. 1997) cert. denied, 522 U.S. 1075 (1998) ....................................15, 17

Forrester v. Prison Health Servs.,
    651 Fed. Appx. 27 (2d Cir. 2016)...................................................................................12

Forte v. Liquidnet Holdings, Inc.,
    2015 U.S. Dist. LEXIS 136474 (S.D.N.Y. Sept. 30, 2015)....................................................24

Goins v. Bridgeport Hospital,
    2014 U.S. App. LEXIS 2693 (2d Cir. Feb. 13, 2014) ...........................................................11

Gorzynski v. Jetlue Airways Corp.,
    596 F.3d 93 (2d Cir. 2010)....................................................................................12, 23

Gross v. FBL Financial Services, Inc.,
    557 U.S. 167 (2009)..........................................................................................12, 13

Harris v. Forklift Sys., Inc.,
    510 U.S. 17 (1993)...............................................................................................23

Herlihy v. Metro. Museum of Art,
    214 A.D.2d 250 (1st Dept. 1995)...................................................................................30

Hollander v. Am. Cyanamid Co.,
    895 F.2d 80 (2d Cir. 1990)..........................................................................................22

Jackson v. Syracuse Newspapers,
    2013 U.S. Dist. LEXIS 138171 (N.D.N.Y, Sept. 26, 2013), aff'd, 574 Fed.
    Appx. 36 (2d Cir. 2014)............................................................................................14

Judith Mills v. S. Conn. State Univ.,
    519 Fed. Appx. 73 (2d Cir. 2013)...................................................................................13

Jute v. Hamilton Sundstrand Corp.,
    420 F.3d 166 (2d Cir. 2005)........................................................................................18

Kolesnikow v. Hudson Valley Hosp. Center,
    622 F. Supp. 2d 98 (S.D.N.Y. 2009)................................................................................16

Kwan v. Andalex Group LLC,
    737 F.3d 834 (2d Cir. 2013)........................................................................................19

Lawless v. TWC Media Solutions, Inc.,
    487 Fed. Appx. 613 (2d Cir. 2012).................................................................................23

Lewis v. Humboldt Acquisition Corp.,
    681 F.3d 312 (6th Cir. 2012) ................................................................12

Leibowitz v. Bank Leumi Trust Co.,
    152 A.D.2d 169 (2d Dept. 1989) ..........................................................30

Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,
    263 F.3d 208 (2d Cir. 2001)..................................................................19

Lucio v. N.Y. City Dep't of Educ.,
    575 Fed. Appx. 3 (2d Cir. 2014)...........................................................19

Margrabe v. Sexter & Warmflash, P.C.,
    353 Fed. Appx. 547 (2d Cir. 2009).......................................................30

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973).............................................................................11

McMenemy v. City of Rochester,
    241 F.3d 279 (2d Cir. 2001)..................................................................18

McPherson v. N.Y. City Dep't of Educ.,
    457 F.3d 211 (2d Cir. 2006)....................................................14, 16, 27

Meiri v. Dacon,
    759 F.2d 989 (2d Cir. 1985)..................................................................10

Mikinberg v. Bemis Co.,
    2014 U.S. App. LEXIS 2007 (2d Cir. Feb. 3, 2014) ............................12

Nicastro v. Runyon,
    60 F. Supp. 2d 181 (S.D.N.Y. 1999).....................................................22

Palmquist v. Shinseki,
    689 F.3d 66 (1st Cir. 2012) ..................................................................13

Patterson v. Cty. of Oneida,
    375 F.3d 206 (2d Cir. 2004)..................................................................24

Ponticelli v. Zurich Am. Ins. Group,
    16 F. Supp. 2d 414 (S.D.N.Y. 1998).....................................................22

Preston v. Bristol Hosp.,
    645 Fed. Appx. 17 (2d Cir. 2016) .........................................................13

Reed v. A.W. Lawrence & Co.,
    95 F.3d 1170 (2d Cir. 1996) .................................................................19

Riordan v. BJ's Wholesale Club, Inc.,
    2011 U.S. Dist LEXIS 3906 (N.D.N.Y. Jan. 14, 2011) ........................................................10

Sanderson v. N.Y. State Elec. & Gas Corp.,
    560 Fed. Appx. 88 (2d Cir. 2014) .........................................................................................19

Serwatka v. Rockwell Automation, Inc.,
    591 F.3d 957 (7th Cir. 2010) ...............................................................................................12

Sista v. CDC Ixis N. Am., Inc.,
    445 F.3d 161 (2d Cir. 2006)................................................................................................11

Slattery v. Swiss Reins. Am. Corp.,
    248 F.3d 87 (2d Cir. 2001)..................................................................................................23

Sosa v. Local Staff, LLC,
    618 Fed. Appx. 19 (2d Cir. 2015)..................................................................................20, 21

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003)................................................................................................19

Thior v. Jetblue Airways, Inc.,
    2016 U.S. Dist. LEXIS 127388 (E.D.N.Y. Sept. 19, 2016)....................................................25

Tomasino v. St. John's Univ.,
    476 Fed. Appx. 923 (2d Cir 2012) .......................................................................................23

Torres v. Pisano,
    116 F.3d 625 (2d Cir. 1997)................................................................................................19

Univ. of Tex. Sw. Med. Ctr. v. Nassar,
    133 S.Ct. 2517 (2013)........................................................................................................18

Venezia v. Luxottica Retail N. Am. Inc.,
    2015 U.S. Dist. LEXIS 130926 (S.D.N.Y. Sept. 28, 2015)....................................................19

Vito v. Bausch & Lomb, Inc.,
    403 Fed. Appx. 593 (2d Cir. 2010).....................................................................................24

Washington v. Garage Mgmt. Corp.,
    2014 U.S. Dist. LEXIS 91144 (S.D.N.Y. July 1, 2014) ........................................................15

Weinstock v. Columbia Univ.,
    224 F.3d 33 (2d Cir. 2000)..................................................................................................11

Yeger v. Inst. of Culinary Educ., Inc.,
    2017 U.S. Dist. LEXIS 10753 (S.D.N.Y. Jan. 25, 2017).......................................................15

## **PRELIMINARY STATEMENT**

Plaintiff is a former director-level employee of Defendant Riverbay Corporation ("Riverbay").  This matter arises out of the suspension of Plaintiff's employment with Riverbay in November 2014, and his subsequent termination.  Plaintiff alleges that Riverbay, along with co-Defendants Cleve Taylor and Bernard Cylich (who became members of Riverbay's Board of Directors in June 2014), subjected him to adverse employment actions and a hostile work environment on the basis of his race (Black), age (65 years old during the relevant time period), purported disability (glaucoma), and in retaliation for complaining of discrimination in violation of: (1)  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"); (3) the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); (4)  the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"); and (5)  the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").  Plaintiff has also asserted causes of action alleging defamation and intentional infliction of emotional distress ("IIED").

Riverbay respectfully submits that Plaintiff cannot create a genuine issue of material fact with respect to any of the causes of action which he has asserted, and Plaintiff's Compliant should be dismissed in its entirety, with prejudice, as a matter of law.  Riverbay suspended and ultimately terminated Plaintiff's employment after it discovered that he was performing work for a different entity, which was unrelated to his job responsibilities for Riverbay during work time and using Riverbay's computers.  Riverbay maintains that Plaintiff's discrimination and retaliation claims must be dismissed as a matter of law because he cannot establish that: (1)  Riverbay took any adverse employment actions against him under

circumstances giving rise to an inference of discrimination or retaliation; and (2) Riverbay's legitimate non-discriminatory and non-retaliatory reasons for taking these actions were a pretext for unlawful discrimination or retaliation. Plaintiff's hostile work environment causes of action are based upon the same incidents which form the basis of his discrimination and retaliation causes of action. Similarly, these causes of action must be dismissed because Plaintiff is unable to raise a material issue of fact to show that any of these actions were taken against him on the basis of any protected characteristic. Plaintiff's defamation cause of action is based upon comments which Defendant Taylor purportedly made at a Board of Directors meeting to other Board members and various Riverbay shareholders regarding Plaintiff's work performance. As any such comments would be protected by the common-interest privilege, Plaintiff's defamation cause of action must be dismissed. Finally, Plaintiff's IIED cause of action, which is based upon the same comments which form the basis of his defamation cause of action, must be dismissed as a matter of law because an IIED cause of action cannot be asserted when it is based upon the same facts that form the basis of a defamation cause of action.

Plaintiff's job with Riverbay ended because Herbert Freedman, a principal in the company that was the managing agent of Riverbay, inadvertently notified Riverbay that Plaintiff was performing outside work during Riverbay work time. This had nothing to do with Plaintiff's race, age, purported disability, or participation in any statutorily protected activity. Thus, based on the undisputed facts and legal precedent discussed herein, Riverbay is entitled to summary judgment as a matter of law.

## STATEMENT OF FACTS

A concise summary of the facts relating to the instant motion is set forth below. [1]

---

[1]  These facts are assumed true for purposes of the instant motion only. All factual statements are followed by a citation to a supporting paragraph in Riverbay's Local Rule 56.1 Statement Of Material Facts Not In Dispute as

I.   **Background Information Regarding Plaintiff's Employment With Riverbay.**

Riverbay, commonly known as "Coop City," is a residential cooperative located in the Bronx, New York. (56.1 ¶ 1). Starting in or around October 1999, Marion Scott Real Estate, Inc. ("MSRE") began serving as Riverbay's managing agent. (56.1 ¶ 2). As managing agent, MSRE was responsible for overseeing day to day operations of the Riverbay property as well as hiring, firing, and directing a majority of Riverbay's employees. (56.1 ¶ 3). MSRE also served as managing agent to numerous other properties that are unrelated to Riverbay, including Rochdale Village ("Rochdale"), 1199 Housing Corp. ("1199"), and Earl W. Jimerson Housing Company, Inc. ("Jimerson"). (56.1 ¶ 4).

In or around May 2003, Plaintiff was hired as Riverbay's Director of Risk Management. (56.1 ¶ 5). As a Riverbay employee, Plaintiff received a copy of Riverbay's Anti-Harassment Policy and Complaint Procedure. (56.1 ¶ 6). Riverbay's Anti-Harassment Policy prohibits harassment and contains an equal employment opportunity policy whereby Riverbay affirms its commitment to equal employment without regard to any employee's or job applicant's protected characteristics including, among other things, race, age, or disability. (56.1 ¶ 7). Riverbay's Complaint Procedure encourages employees to notify management in the event they believe that they are being discriminated against or harassed. (56.1 ¶ 8).

As Director of Risk Management, Plaintiff's job responsibilities included insurance procurement, ensuring that Riverbay and outside vendors had sufficient insurance coverage, and analyzing and assessing legal claims asserted against Riverbay. (56.1 ¶ 9). Prior to Plaintiff's hire, Deborah Kelly served in a combined position as Riverbay's Director of Risk

---

("56.1 ¶ __"). References to relevant transcript pages of Plaintiff's deposition are abbreviated herein as "Pl. Dep. __." References to the transcript pages of other individuals deposed in this case are designated by the deponent's last name. Copies of all transcript pages cited herein are attached to the Affirmation Of Joseph Saccomano, Jr. In Support Of Defendant Riverbay Corporation's Motion For Summary Judgment.

Management and Director of Human Resources. (56.1 ¶ 10). In 2003, these positions were split and Plaintiff was hired as Director of Risk Management. (56.1 ¶ 11). Although Plaintiff was a Riverbay employee, he reported directly to MSRE's General Manager, Vernon Cooper. (56.1 ¶ 12). Mr. Cooper reported to Herbert Freedman who was a principal of MSRE. (56.1 ¶ 13). MSRE evaluated Plaintiff's job performance and determined any salary increases Plaintiff received. (56.1 ¶ 14).

On or about February 4, 2005, Ms. Kelly left her position as Director of Human Resources. (56.1 ¶ 15). Mr. Cooper and Mr. Freedman asked Plaintiff to oversee Riverbay's human resources responsibilities while they searched for someone to replace Ms. Kelly. (56.1 ¶ 16). On or about May 29, 2005, Riverbay hired Mirande Valbrune to replace Ms. Kelly as Director of Human Resources. (56.1 ¶ 17). Ms. Valbrune's employment with Riverbay ended on June 2, 2008. (56.1 ¶ 18). When Ms. Valbrune left, Mr. Cooper and Mr. Freedman once again asked Plaintiff to oversee Riverbay's human resources responsibilities while they searched for a replacement. (56.1 ¶ 19). On or about September 10, 2008, Colette Ragin was hired as Riverbay's Director of Human Resources. (56.1 ¶ 20). In or about July 2012, MSRE decided to recombine the Director of Risk Management and Director of Human Resources job positions. (56.1 ¶ 21). MSRE also decided that this new position should oversee Riverbay's Department of Office Management. (56.1 ¶ 22). MSRE reassigned Ms. Ragin and offered this combined position to Plaintiff. (56.1 ¶ 23). When Plaintiff accepted this new position, MSRE increased his salary from $130,000 to $145,000 to compensate him for the additional work responsibilities he would be performing. (56.1 ¶ 24).

In 2013, a class action lawsuit was commenced against Riverbay regarding purported widespread wage and hour issues. (56.1 ¶ 25). This lawsuit, which eventually ended

with a multi-million dollar settlement, revealed numerous problems with Riverbay's employment practices including employee misclassification, failure to properly pay overtime, and failure to keep Riverbay's employee handbook updated. (56.1 ¶ 26). These employment practices were all the responsibility of Riverbay's Human Resources Department and MSRE. (56.1 ¶ 27). Although Plaintiff only held the title of Director of Human Resources during a portion of the time period covered in the lawsuit, he had overseen the Human Resources Department on numerous prior occasions within the time period relevant to the lawsuit. (56.1 ¶ 28).

**II.    Plaintiff's Salary Was Reduced After Riverbay Was Apprised Of A Budget Deficit.**

In or about June 2014, Riverbay's shareholders elected Defendant Cleve Taylor and Defendant Bernard Cylich to its Board of Directors. (56.1 ¶ 29). The Board members then elected Mr. Taylor as the Board's President and Mr. Cylich as the Board's Treasurer. (56.1 ¶ 30). During Mr. Taylor's campaign he frequently criticized MSRE. (56.1 ¶ 31).

Shortly after Mr. Taylor and Mr. Cylich were elected to their positions, Riverbay's outside accounting firm advised Mr. Taylor and Mr. Cylich that Riverbay had a six-figure negative cash balance. (56.1 ¶ 32). The accounting firm separately provided the same information to Peter Merola, Riverbay's Director of Finance. (56.1 ¶ 33). Based upon this information, during a July 9, 2014 Board meeting, Mr. Taylor proposed a number of cost-saving measures including: (1) reducing the Risk Management Director's budget line by $70,000; (2) eliminating the position of Deputy Chief of the Public Safety Department; and (3) instituting a hiring freeze. (56.1 ¶ 34). The Board chose the Risk Management Director's budget as one of the areas to cut costs because MSRE had instituted increases in this budget over time, and based upon a review of the Department of Risk Management's financial statements, the Board felt that it was an area that had room for a reduction. (56.1 ¶ 35). The Board passed resolutions adopting

all three of these proposals. (56.1 ¶ 36). 13 out of the 15 Board members who voted on these resolutions are Black. (56.1 ¶ 37). In response to the Board's resolution, MSRE reduced Plaintiff's salary by $70,000. (56.1 ¶ 38). Additionally, MSRE eliminated the position of Deputy Chief of the Public Safety Department and Gerardo Blanco's employment was terminated. (56.1 ¶ 39). Mr. Blanco is Hispanic. (56.1 ¶ 40).

In August 2014, Plaintiff attended a meeting with Mr. Taylor, Mr. Cylich, Mr. Merola, Mr. Freedman, Mr. Cooper, Ms. Ragin, and MSRE's Assistant General Manager Gail Badger. (56.1 ¶ 41). During the meeting, MSRE announced that they were going to once again separate the positions of Director of Risk Management and Director of Human Resources. (56.1 ¶ 42). MSRE reinstated Ms. Ragin as Director of Human Resources. (56.1 ¶ 43). Ms. Ragin is Black. (56.1 ¶ 44). As Plaintiff's work responsibilities had been reduced, MSRE reinstated Plaintiff's salary to the $130,000 he had been earning prior to taking over the Director of Human Resources responsibilities. (56.1 ¶ 45).

**III.   Plaintiff's Employment Was Terminated After Riverbay Learned That Plaintiff Was Performing Work For MSRE's Other Properties During Riverbay Work Time.**

In November 2014, Mr. Taylor asked Mr. Freedman for proof that MSRE had obtained a fidelity bond naming Riverbay as an insured in an amount required by New York State regulations. (56.1 ¶ 46). On November 12, 2014, Mr. Freedman responded to Mr. Taylor's inquiries by forwarding to Mr. Taylor, along with Riverbay's General Counsel Jeffrey Buss, an email which included an email trail that showed Plaintiff corresponding with a representative of the brokerage firm York International Agency, LLC, regarding insurance policies for 1199, Jimerson, and a property referred to as "brownstone." (56.1 ¶ 47). 1199 and Jimerson are properties that MSRE manages which have no relation to Riverbay. (56.1 ¶ 48). Plaintiff

personally owned the brownstone in question. (56.1 ¶ 49). The email thread showed that Plaintiff performed this work from his Riverbay email account during regular working hours.  (56.1 ¶ 50).

As a result of this information, Riverbay retained Mr. Buss's law firm, Smith, Buss & Jacobs, LLP ("SB&J"), to conduct an investigation including a search of the Riverbay computer which Plaintiff used.  (56.1 ¶ 51).  This search revealed a large volume of emails and other documents which showed that for an extended period of time Plaintiff had been performing work during regular working hours for other properties that MSRE managed including Rochdale Village ("Rochdale"), 1199, and Jimerson.  (56.1 ¶ 52).  These emails showed that Plaintiff had, among other things, attended meetings with insurance brokers regarding these properties, made recommendations to certain of these properties about switching insurance carriers, and directed the actions of Rochdale's Director of Human Resources.  (56.1 ¶ 53).

For example, among the emails that were discovered was an August 19, 2014 email which Plaintiff sent to Mr. Freedman as well as Anthony Coleman, a representative of 1199, wherein Plaintiff explained information he had obtained through back and forth correspondence with an insurance broker regarding 1199's flood insurance policy. (56.1 ¶ 54). In email correspondence which Plaintiff exchanged with an insurance broker named Jack McArdle between July 29, 2014 and August 25, 2014, Plaintiff discussed: (1) a meeting which he attended with Mr. McArdle regarding insurance for Rochdale; and (2) his efforts to obtain and provide to Mr. McArdle various information for use in bidding on Rochdale's insurance.  (56.1 ¶ 55).  In an October 22, 2014 email which Plaintiff sent to members of Rochdale and MSRE, Plaintiff indicated that he had participated in selecting an insurance broker for Rochdale.  (56.1 ¶ 56).  In an October 23, 2014 email which Plaintiff sent to Elizabeth Goldsmith, Rochdale's Human Resources Director, Plaintiff directed Ms. Goldsmith to take certain specific steps to

renew Rochdale's health insurance policy. (56.1 ¶ 57). There was also November 4, 2014 email correspondence which indicated that Plaintiff: (1) reviewed portions of a proposal for an insurance policy for 1199 and Jimerson; (2) discussed terms of the proposal with an insurance broker; and then (3) made a recommendation to MSRE that 1199 and Jimerson should switch insurance policies. (56.1 ¶ 58). Plaintiff acknowledges that the emails which Riverbay discovered were sent during Riverbay work time. (56.1 ¶ 59).

When Plaintiff arrived at work on November 17, 2014, he was escorted to a conference room where Mr. Taylor was sitting. (56.1 ¶ 60). Mr. Taylor waited for Mr. Cylich, Mr. Freedman, and all of the MSRE employees that performed work for Riverbay to arrive. (56.1 ¶ 61). Mr. Taylor then told Mr. Freedman that MSRE was suspended and that all MSRE employees were to leave Riverbay immediately. (56.1 ¶ 62). When all of the MSRE employees started to leave, Plaintiff asked Mr. Taylor whether he should leave as well since he was a Riverbay employee, not an MSRE employee. (56.1 ¶ 63). Mr. Taylor responded to Plaintiff that he was suspended indefinitely. (56.1 ¶ 64). Plaintiff testified that he believed that his suspension was an afterthought to Mr. Taylor. (56.1 ¶ 65).

On November 18, 2014, Mr. Taylor, Mr. Cylich, and Mr. Buss visited York International's White Plains office to investigate the extent to which Plaintiff had contacted York regarding MSRE's other properties. (56.1 ¶ 66). York representatives confirmed that Plaintiff had frequently contacted their company during the work day from his Riverbay phone number and email address regarding various MSRE properties. (56.1 ¶ 67).

On November 19, 2014, Riverbay held a Board of Directors meeting that was open to Riverbay's shareholders. (56.1 ¶ 69). During the meeting, Mr. Taylor reported to the Board and shareholders his dissatisfaction with the performance of MSRE and the information

he learned about Plaintiff performing work for other MSRE properties during work time.  (56.1 ¶ 70).  Based upon this information, the Board passed a resolution whereby it: (1) concurred with Mr. Taylor's decision to suspend MSRE and Plaintiff; (2) directed SB&J to investigate the extent of MSRE's and Plaintiff's wrongdoing; and (3) appointed Noel Ellison and Mr. Merola as interim General Managers in place of MSRE.  (56.1 ¶ 71).  Mr. Ellison is African American. (56.1 ¶ 72).  At the time that they were appointed as co-interim General Managers, Mr. Ellison was 62 years old and Mr. Merola was 54 years old.  (56.1 ¶ 73-74).

Thereafter, SB&J conducted an investigation which included a March 5, 2015 interview of Plaintiff by Mr. Buss in the presence of Plaintiff's legal counsel in this lawsuit. (56.1 ¶ 75).  During the interview, Plaintiff admitted to performing work for MSRE's other properties during Riverbay work time.  (56.1 ¶ 76).  Shortly after the interview, Mr. Buss informed Mr. Ellison and the Board about the information he had obtained from Plaintiff.  (56.1 ¶ 77).  Mr. Ellison made the decision to terminate Plaintiff's employment effective April 2, 2015. (56.1 ¶ 78).  On or about May 26, 2015, SB&J issued a written report to the Board advising that MSRE and Plaintiff were guilty of wrongdoing.  (56.1 ¶ 79).

## ARGUMENT

### SUMMARY JUDGMENT MUST BE GRANTED BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND RIVERBAY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

A "party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In the context of a summary judgment motion, the initial burden is on the movant to demonstrate the

absence of a genuine issue of material fact.  See Riordan v. BJ's Wholesale Club, Inc., 2011 U.S. Dist LEXIS 3906, at *18 (N.D.N.Y. Jan. 14, 2011).[2]  Once the moving party meets this initial burden, "the non-moving party must go beyond the pleadings and do more than simply show there is some metaphysical doubt as to the material facts."  Id. at 18-19, quoting Matsuhita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).  "The non-moving party may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  Riordan, 2011 U.S. Dist LEXIS 3906 at *19, quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  Moreover, the "summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  Thus, Plaintiff must "offer concrete evidence from which a reasonable juror could render a verdict in his favor, and is not entitled to a trial simply because the determinative issue focuses upon the Defendant's state of mind."  Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).  Under the foregoing standard, Riverbay is entitled to summary judgment because Plaintiff cannot identify facts necessary to establish any of the causes of action contained in his Complaint.

**POINT I**     **PLAINTIFF CANNOT ESTABLISH ANY OF HIS DISCRIMINATION CAUSES OF ACTION BECAUSE HE DID NOT SUFFER AN ADVERSE EMPLOYMENT ACTION UNDER CIRCUMSTANCES THAT GIVE RISE TO AN INFERENCE OF DISCRIMINATION.**

Plaintiff alleges Defendants reduced his salary, removed his job functions as Director of Human Resources, suspended him, and ultimately terminated his employment because of his race, age, and purported disability.  Plaintiff asserts discrimination causes of

---

[2] Copies of cases cited herein which are not published in an official reporter are attached to the Saccomano Aff. as Exhibit "11."

action under Title VII, the ADEA, the ADA, the NYSHRL, and the NYCHRL. For the reasons set forth below, Plaintiff's discrimination causes of action must be dismissed as a matter of law.

Title VII, ADEA, ADA, NYSHRL, and NYCHRL discrimination claims are analyzed pursuant to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (ADEA, NYSHRL, NYCHRL); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (ADA); Goins v. Bridgeport Hospital, 2014 U.S. App. LEXIS 2693 (2d Cir. Feb. 13, 2014) (Title VII). As an initial step in the McDonnell Douglas burden shifting test, Plaintiff must establish a *prima facie* case of discrimination. To do so, he must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) such adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Allen v. Murray-Lazarus, 2012 U.S. App. LEXIS 3509, at * 4 (2d Cir. Feb. 21, 2012). If a plaintiff can establish a *prima facie* case of discrimination, the burden shifts to the defendant to "articulate legitimate, nondiscriminatory reasons" for its adverse employment actions. See McDonnell Douglas Corp., 411 U.S. at 802. Once the defendant articulates its nondiscriminatory reasons, the burden shifts back to the plaintiff to "come forward with evidence that the . . . proffered . . . reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

For Plaintiff to establish pretext on his Title VII and NYCHRL discrimination claims, as well as his NYSHRL race discrimination claim, he must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not the discrimination was the real reason for the employment action." Id. However, for Plaintiff to

establish pretext on his ADEA and NYSHRL age discrimination claims, he must demonstrate that Riverbay's stated reason was false and that "but for" his age, he would not have suffered the adverse employment action.  See Mikinberg v. Bemis Co., 2014 U.S. App. LEXIS 2007, at *3 (2d Cir. Feb. 3, 2014).[3]  Finally, although the Second Circuit has not yet ruled on whether ADA and NYSHRL disability discrimination causes of action should be analyzed under the "mixed motive" or "but for" causation standard, the Second Circuit has suggested that ADA discrimination claims should likely be analyzed under a "but for" standard.  See Forrester v. Prison Health Servs., 651 Fed. Appx. 27, 28 (2d Cir. 2016) ("It is questionable whether ADA discrimination claims can proceed on a mixed-motive theory after the Supreme Court's decision in Gross.").  Moreover, numerous other Circuits have definitively ruled that ADA claims should be analyzed under a "but for" causation standard.  See Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir. 2012) ("The ADEA and the ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for' cause of the employer's adverse decision.  The same standard applies to both laws."); Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 962 (7th Cir. 2010) (applying Gross to the ADA by holding that "in the absence of any additional text bringing mixed-motive claims within the reach of the [ADA], the statute's 'because of' language demands proof that a forbidden consideration—here, the employee's perceived disability—was a 'but for' cause of the adverse

---

[3]  In Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176 (2009), the Supreme Court held "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor.  See Gross 557 U.S. at 180.  While the issue has not yet been definitively decided, the Second Circuit repeatedly has stated it believes NYSHRL age discrimination claims should be analyzed under the "but for" standard which the Supreme Court set forth in Gross.  See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93 at 106 n.6 (2d Cir. 2010) ("The law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL. Accordingly, we assume, without deciding, that the Supreme Court's Gross decision affects the scope of the NYHRL law as well as the ADEA."); Mikinberg, 2014 U.S. App. LEXIS 2007, at *3 ("As to the New York state law claim, we have assumed, without deciding, that the ADEA's 'but for' standard of causation also applies to age discrimination claims brought under the NYSHRL.").

action"); Palmquist v. Shinseki, 689 F.3d 66, 74 (1st Cir. 2012) (applying Gross causation analysis due to the ADA's "because of" language).

Plaintiff is unable to establish a *prima facie* case of discrimination because he cannot create a genuine material issue of fact as to whether Defendants took any adverse action against him on the basis of his race, age, or purported disability.

### A. **Plaintiff Cannot Demonstrate That His Salary Reduction Was Discriminatory.**

The record demonstrates that the Board passed a resolution reducing the Risk Management Director's budget line by $70,000 after Riverbay's outside accounting firm informed Mr. Taylor, Mr. Cylich, and Mr. Merola that Riverbay had a $300,000.00 cash deficit. (56.1 ¶ 32-36). Mr. Taylor and Mr. Cylich considered the Risk Management Department as a potential area for savings because after reviewing the Department's financial statements they believed there was room to make cuts in light of numerous increases that MSRE had made to that Department's budget over the years. (56.1 ¶ 35). Importantly, during the same July 9, 2014 Board meeting, the Board also voted to eliminate the position of Deputy Chief of the Public Safety Department. (56.1 ¶ 34-36). This decision resulted in the termination of the employment of Gerardo Blanco, who is Hispanic, not Black. (56.1 ¶ 39-40). Unlike Mr. Blanco, Plaintiff's employment was not terminated; instead his salary was just reduced. (56.1 ¶ 38). This alone negates any inference that Plaintiff's salary was reduced on the basis of his race. See Preston v. Bristol Hosp., 645 Fed. Appx. 17, 21-22 (2d Cir. 2016) (affirming the District Court's dismissal of the plaintiff's discrimination claim where another employee outside the plaintiff's protected class was terminated in the same timeframe as plaintiff and for the same reasons as plaintiff); Judith Mills v. S. Conn. State Univ., 519 Fed. Appx. 73, 75 (2d Cir. 2013) (finding the plaintiff failed to establish a reasonable inference of discrimination where she could not establish that

similarly situated individuals outside of her protected class were treated better); Chin v. ABN-AMRO North America, Inc., 463 F. Supp. 2d 294, 303 (E.D.N.Y. 2006) (the fact that younger employees were dismissed along with the plaintiff refutes a claim of age discrimination); Jackson v. Syracuse Newspapers, 2013 U.S. Dist. LEXIS 138171, at *45 (N.D.N.Y, Sept. 26, 2013), aff'd, 574 Fed. Appx. 36 (2d Cir. 2014) (where plaintiff failed to demonstrate that his comparators were treated differently, there is no evidence of pretext).

Plaintiff's allegation that his salary was reduced because of his race is further belied by the fact that 13 out of the 15 Board members who voted on these resolutions are Black. (56.1 ¶ 37). Plaintiff's allegation that his age played any factor in his salary reduction is refuted by the fact that Mr. Taylor is 60 years old and Mr. Cylich is 76 years old. (56.1 ¶ 79-80). Plaintiff was 65 years old during the time period relevant to his allegations. (56.1 ¶ 89). Finally, neither Mr. Taylor nor Mr. Cylich had any knowledge of Plaintiff's medical condition. (56.1 ¶ 82-83). Plaintiff offers no evidence to support his belief that Mr. Taylor was aware of his glaucoma. Plaintiff believes that Mr. Cylich was aware of his glaucoma because he thinks Mr. Cylich saw him walk into objects and because he claims that Mr. Cylich once asked him if he could see a bag of dirt in regard to his risk management responsibilities. (Pl. Dep. at 84-85). However, Mr. Cylich testified that he: (1) did not know that Plaintiff suffered from glaucoma; and (2) never noticed Plaintiff having any issues with his vision. (56.1 ¶ 82-83). Thus, Plaintiff's belief to the contrary is entirely speculative and insufficient to create a material issue of fact. See Bennett v. Goord, 2008 U.S. App. LEXIS 24441, at *4 (2d Cir. 2008); McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("speculation alone is insufficient to defeat a motion for summary judgment"). For these reasons, the record does not

support an inference that Plaintiff's race, age, or purported glaucoma played any factor into his salary reduction.

**B. Plaintiff Cannot Demonstrate That Riverbay Removed His Human Resources Responsibilities For Discriminatory Reasons.**

Plaintiff's belief that Riverbay took away his human resources responsibilities because of his race, age, or disability is baseless because the record makes it clear that MSRE, not Defendants, chose to reinstate Ms. Ragin to her former Director of Human Resources position. (56.1 ¶ 43). Moreover, Plaintiff testified that he believed the reason Mr. Taylor wanted Ms. Ragin to be reassigned as Director of Human Resources was because Mr. Taylor and Ms. Ragin were friends. (Pl. Dep. at 123). Thus, even if Plaintiff was correct that Defendants were responsible for the loss of his human resources responsibilities, this loss is not actionable because, by Plaintiff's own testimony, the decision was motivated by friendship rather Plaintiff's membership in any protected group. See Fisher v. Vassar College, 114 F.3d 1332, 1337-38 (2d Cir. 1997) cert. denied, 522 U.S. 1075 (1998) (non-discriminatory reasons for personnel decisions such as "institutional politics, nepotism, spite, or personal hostility" do not give rise to actionable discrimination claims); Washington v. Garage Mgmt. Corp., 2014 U.S. Dist. LEXIS 91144, at *26-27 (S.D.N.Y. July 1, 2014) ("It is well-established that nepotism is not actionable under the federal anti-discrimination statutes.") citing Sogluizzo v. Int'l Brotherhood of Teamsters, 514 F. Supp. 277, 278-80 (S.D.N.Y. 1981). In addition, as Ms. Ragin is Black and was 55 years old at the time that she was reassigned as Director of Human Resources, there can be no inference that Plaintiff's race or age played any factor in this decision. (56.1 ¶ 90). See Yeger v. Inst. of Culinary Educ., Inc., 2017 U.S. Dist. LEXIS 10753, at *44-45 (S.D.N.Y. Jan. 25, 2017) (rejecting any inference of age discrimination where the plaintiff alleged that she was discriminated against in favor of other people within her own protected class).

## C. Plaintiff Cannot Demonstrate That His Suspension Or Termination Was Discriminatory.

Finally, there is absolutely no basis from which to draw an inference that Plaintiff's suspension or termination had any connection to his race, age, or medical condition. Riverbay had no intention of terminating Plaintiff until Mr. Freedman sent Mr. Taylor the November 12, 2014 email whereby he disclosed to Mr. Taylor the fact that Plaintiff had been performing work for MSRE's other properties while he was being paid to work for Riverbay. (56.1 ¶ 84). Plaintiff acknowledges that he performed this outside work during Riverbay work time. (56.1 ¶ 59, 76). Although Plaintiff now claims that the time he spent on this work was *de minimis*, it is undisputed that Mr. Taylor and Mr. Cylich reasonably believed that Plaintiff devoted a substantial amount of time to this work, which included attending meetings for MSRE's other properties and reviewing large insurance policies. (56.1 ¶ 52-59, 85). In addition to reviewing an extensive amount of emails which indicated that Plaintiff had been performing this outside work over an extended period of time, Mr. Taylor's and Mr. Cylich's suspicions were confirmed by a representative of York International. (56.1 ¶ 66-67). Nevertheless, in analyzing a discrimination claim, it is irrelevant whether a decision-maker is correct in his assessment to take an adverse action against an employee; all that matters is whether the decision was based upon discriminatory motives. See McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case… we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer….") (emphasis in original); Kolesnikow v. Hudson Valley Hosp. Center, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) (the questions is not "whether the employer reached a correct conclusion in attributing fault [to the plaintiff]…, but whether the employer made a good-faith business determination"); Ascione v. Pfizer, Inc., 312 F. Supp. 2d 572, 578 (S.D.N.Y. 2004) (declining to

determine whether the plaintiff actually falsified time sheets so long as her employer reasonably believed she did so).

Moreover, it is undisputed that Mr. Taylor was dissatisfied with the performance of MSRE and made his feelings known during his presidential campaign. (56.1 ¶ 31). When Mr. Taylor met with Mr. Friedman on November 17, 2014 and told him that all MSRE employees should leave Riverbay, Plaintiff testified that he appeared to be an afterthought for Mr. Taylor and Mr. Taylor only informed him that he was suspended after Plaintiff asked him whether he should leave as well. (56.1 ¶ 65). Plaintiff's testimony on this point demonstrates that his suspension was a result Mr. Taylor's issues with MSRE and negates any inference that his race, age, or purported disability factored into the decision-making process. See Fisher, 114 F.3d at 1337-38 (non-discriminatory reasons for personnel decisions such as "institutional politics, nepotism, spite, or personal hostility" do not give rise to actionable discrimination claims).

The fact that: (1) Mr. Taylor and Mr. Cylich caught Plaintiff performing work for MSRE's other companies during Riverbay work time; and (2) Mr. Taylor was dissatisfied with MSRE and everyone associated with MSRE, belies any inference that Plaintiff's race, age, or purported disability played any role in his suspension. This is further confirmed by the fact that the Board appointed Noel Ellison, a 62-year old Black man, as co-interim General Manager in place of MSRE. (56.1 ¶ 71-73). Mr. Ellison ultimately made the decision to terminate Plaintiff's employment based upon the same evidence that led to his suspension and which Plaintiff acknowledged during his interview with Mr. Buss. (56.1 ¶ 77-78).

Under these undisputed facts, Plaintiff cannot meet his initial burden of demonstrating that his salary decrease, loss of human resources responsibilities, suspension, or

termination occurred under circumstances giving rise to an inference of race, age, or disability discrimination. Moreover, even if the Court finds Plaintiff's conclusory allegations sufficient to establish a *prima facie* case, for the same reasons outlined above, Plaintiff cannot meet his ultimate burden of showing that Riverbay's legitimate non-discriminatory reasons are pretextual and that: (1) "more likely than not" these actions were taken due to Plaintiff's race (or age or disability as per the NYCHRL); or (2) these actions would not have been taken "but for" Plaintiff's age or disability. Thus, Plaintiff's discrimination claims under Title VII, the ADEA, the ADA, the NYSHRL, and the NYCHRL must be summarily dismissed.

**POINT II**      **PLAINTIFF'S RETALIATION CAUSES OF ACTION MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT ESTABLISH A CAUSAL CONNECTION BETWEEN HIS PARTICIPATION IN ANY PROTECTED ACTIVITY AND ANY ADVERSE EMPLOYMENT ACTION.**

Plaintiff also asserts retaliation causes of action under Title VII, the ADEA, the ADA, the NYSHRL, and the NYCHRL. To establish a *prima facie* case of retaliation under Title VII, the ADEA, the ADA, or the NYSHRL, a plaintiff must show: (1) participation in a statutorily protected activity; (2) that defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. See McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001); Boise v. Boufford, 121 Fed. Appx. 890, 893 (2d Cir. 2005); Davenport v. City of White Plains, 2015 U.S. Dist. LEXIS 127751, at *15 (S.D.N.Y. July 8, 2015). Once the plaintiff has presented a *prima facie* case of retaliation, "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the plaintiff's "protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar,

133 S.Ct. 2517, 2534 (2013); Kwan v. Andalex Group LLC, 737 F.3d 834, 845-46 (2d Cir.

2013); Sanderson v. N.Y. State Elec. & Gas Corp., 560 Fed. Appx. 88, 93 (2d Cir. 2014).[4]

To establish a *prima facie* case of retaliation under the NYCHRL, a plaintiff must

show: (1) participation in a statutorily protected activity; (2) that defendant knew of the protected

activity; (3) an employment action that disadvantaged the plaintiff in any manner; and (4) a

causal connection between the protected activity and the negative employment action.  See

Fattoruso v. Hilton Grand Vacations Co., 525 F. App'x 26, 27 (2d Cir. 2013).  Once the plaintiff

has presented a *prima facie* case of retaliation, the employer must "articulate[] a legitimate, non-

retaliatory reason for the challenged action." Venezia v. Luxottica Retail N. Am. Inc., 2015 U.S.

Dist. LEXIS 130926, at *33 (S.D.N.Y. Sept. 28, 2015).  If the defendant satisfies its burden of

production, the plaintiff must "prov[e] by a preponderance of evidence, that the conduct was

reasonably likely to deter a person from engaging in protected activity." Id., quoting Williams v.

N.Y.C. Housing Auth., 61 A.D.3d 62, 71 (1st Dept. 2009).

Plaintiff is unable to establish a *prima facie* case of retaliation.  The only two

incidents in which Plaintiff could have arguably engaged in statutorily protected activity were:

(1) his alleged discussion with Mr. Taylor in the Summer of 2014 during which he purports to

have complained about his salary reduction; and (2) the complaint that his attorney submitted in

January 2015.  Neither of these events can form the basis of a retaliation cause of action.

---

[4]  The *prima facie* elements and burdens of proof used to evaluate Title VII retaliation claims are also applicable to retaliation claims brought under the ADEA, the ADA, and the NYSHRL.  See Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII); Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003) (applying the same standards and burdens in evaluating retaliation claims under Title VII and the ADEA); Reed v. A.W. Lawrence & Co., 95 F.3d 1170 (2d Cir. 1996) (New York state courts apply the federal Title VII standard to retaliation claims under the NYSHRL); Lucio v. N.Y. City Dep't of Educ., 575 Fed. Appx. 3, 5-6 (2d Cir. 2014) (analyzing Title VII and NYSHRL retaliation claims identically); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases.").

.

### A. **Plaintiff's Alleged Summer 2014 Conversation With Mr. Taylor Did Not Constitute Statutorily Protected Activity.**

As to Plaintiff's Summer 2014 conversation with Mr. Taylor, Plaintiff testified that he: (1) pointed out to Mr. Taylor that he was Riverbay's only Black director; and (2) told Mr. Taylor that he believed that his salary had been reduced as part of a plan by Mr. Taylor to reinstate Ms. Ragin as Director of Human Resources. (Pl. Dep. at 78-80). As an initial matter, Mr. Taylor denies that any such conversation occurred. (Taylor Dep. at 147-48). Nevertheless, even if such a conversation did occur, Plaintiff's comments did not constitute statutorily protected activity because Plaintiff could not have objectively and subjectively believed that he was complaining about conduct that violated the anti-discrimination laws under which he is now seeking recourse. For a complaint to constitute statutorily protected activity, the plaintiff must "demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Sosa v. Local Staff, LLC, 618 Fed. Appx. 19, 19 (2d Cir. 2015), quoting Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988). Both the factual inaccuracy and substance of Plaintiff's purported statement to Mr. Taylor precludes him from demonstrating that he had a good faith, reasonable belief that he was complaining of discriminatory activity.

In the first instance, Donovan Plummer was a Black director-level employee for Riverbay throughout the entirety of the period at issue in this lawsuit. (56.1 ¶ 86). Therefore, Plaintiff's statement that he was Riverbay's only Black director-level employee is patently false. Moreover, in Plaintiff's account of his conversation with Mr. Taylor, he accused Mr. Taylor of having his salary reduced as part of a scheme to reinstate Ms. Ragin as Director of Human Resources. (Pl. Dep. at 78-80). As Ms. Ragin is Black, Plaintiff cannot have had a good faith reasonable belief that he was complaining of actions protected by the anti-discrimination laws by

pointing out that he was a Black employee who was entangled in a scheme to be replaced with another Black employee. (56.1 ¶ 44). Therefore, no portion of this alleged conversation constituted statutorily protected activity. See Sosa, 618 Fed. Appx. at 19, quoting Manoharan, 842 F.2d at 593.

### B. Plaintiff Cannot Establish A Causal Connection Between His Purported Summer 2014 Conversation With Mr. Taylor And Any Negative Employment Action.

Nevertheless, even if Plaintiff's comments during this purported conversation could have constituted statutorily protected activity, there is no basis for tying these comments to any negative employment action. Plaintiff testified that after he complained to Mr. Taylor about his salary reduction, Mr. Taylor responded that he would look into it. (Pl. Dep. at 78-80). Shortly thereafter, Plaintiff's salary was increased by $50,000 back to the $130,000 he had been earning prior to being given the Director of Human Resources position. (56.1 ¶ 45). These events demonstrate a lack of retaliatory animus on the part of Mr. Taylor.

Moreover, Plaintiff cannot successfully argue that MSRE's decision to give the Director of Human Resources position back to Ms. Ragin was the result of retaliation by Riverbay because the undisputed record shows that it was MSRE, not Riverbay, who decided to give that position back to Ms. Ragin. (56.1 ¶ 43). Even if there was sufficient evidence on the record to tie Plaintiff's loss of the Director of Human Resources responsibilities to Defendants, Plaintiff testified that he believed Mr. Taylor wanted Ms. Ragin to have the Director of Human Resources position because they were friends. (Pl. Dep. at 123). Therefore, by Plaintiff's own testimony, the decision was based upon nepotism rather than retaliatory motives.

Finally, Plaintiff cannot tie his suspension and termination to his purported Summer 2014 conversation with Mr. Taylor. In the first instance, Plaintiff was suspended on November 17, 2014, which was at least three months after his conversation with Mr. Taylor.

(56.1 ¶ 64).   This three-month gap prevents Plaintiff from establishing a causal connection between this purported conversation and his subsequent suspension.   See Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (three months between protected activity and adverse employment action was insufficient temporal proximity to support retaliation claim); Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation."); Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (two-and-a-half month gap too long to give rise to inference of causal connection).   Moreover, it is undisputed that Plaintiff was caught performing services for MSRE's other properties during Riverbay work time, and Plaintiff testified that his suspension appeared to be an afterthought to Mr. Taylor who had a known dislike of MSRE.   (56.1 ¶ 50, 59, 65, 76).   In light of these undisputed facts, Plaintiff cannot raise any inference that his suspension and termination were retaliatory.

### C.   Plaintiff Cannot Tie His Attorney's January 2015 Complaint To His April 2015 Termination.

There is also no basis for drawing a causal connection between Plaintiff's attorney's January 2015 complaint and the termination of Plaintiff's employment three months later in April 2015.   In the first instance, since the two events occurred two and a half months apart, they lack temporal proximity to create an inference of retaliatory motive.   See Hollander, 895 F.2d at 85-86; Nicastro, 60 F. Supp. 2d at 185; Ponticelli, 16 F. Supp. 2d at 436.   Moreover, Plaintiff's termination was the final step in a course of actions which occurred as a result of Riverbay learning that Plaintiff had been performing work for MSRE's other properties during Riverbay work time.   As this process had begun with Plaintiff's November 17, 2014 suspension and the investigation which had commenced immediately thereafter, there is no basis for drawing

a causal link between this January 2015 complaint and Plaintiff's termination.  See Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) (where "adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); Tomasino v. St. John's Univ., 476 Fed. Appx. 923, 925 (2d Cir 2012) (same).

Even if the Court finds that Plaintiff can establish a *prima facie* case of retaliation, Plaintiff is unable to meet his ultimate burden of demonstrating that he was retaliated against under the NYCHRL, let alone under the "but for" standard which the other statutes at issue apply to retaliation claims.  Therefore, Plaintiff's retaliation claims must be summarily dismissed.

**POINT III**     **PLAINTIFF CANNOT ESTABLISH A CLAIM OF HOSTILE WORK ENVIRONMENT BECAUSE HE CANNOT SHOW THAT HE WAS MISTREATED AS A RESULT OF HIS MEMBERSHIP IN ANY PROTECTED GROUP.**

To establish a hostile work environment claim under Title VII, the ADEA, the ADA, or the NYSHRL "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Lawless v. TWC Media Solutions, Inc., 487 Fed. Appx. 613, 618 (2d Cir. 2012), citing Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010); Ben-Levy v. Bloomberg, 518 Fed. Appx. 17, 20 (2d Cir. 2013).  In determining whether a plaintiff has met this burden, courts employ a totality of the circumstances test, "considering a variety of factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Lawless, 487 Fed. Appx. at 618, citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  Moreover, a "plaintiff must demonstrate that the

conduct occurred because of [his] membership in a protected class." Vito v. Bausch & Lomb, Inc., 403 Fed. Appx. 593, 595 (2d Cir. 2010).

Because claims for hostile work environment and discrimination are governed by the same provision of the NYCHRL, they are analyzed using the same standard and only take into account the severity or pervasiveness of the alleged hostile conduct at the damages stage. See Bacchus v. N.Y. City Dept. of Ed., 137 F. Supp. 3d 214, 245-46 (E.D.N.Y. 2015), citing Russo v. New York Presbyterian Hosp., 972 F. Supp. 2d 429, 449-50 (E.D.N.Y. 2013). However, the NYCHRL is "not a general civility code," and to establish a hostile work environment cause of action under the NYCHRL, the plaintiff still must show that he was subjected to harassment which arose beyond "petty slights and trivial inconveniences." Forte v. Liquidnet Holdings, Inc., 2015 U.S. Dist. LEXIS 136474, at n.12 (S.D.N.Y. Sept. 30, 2015), quoting Russo, 972 F. Supp. at 450. Plaintiff has not met his burden to establish a hostile environment claim as a matter of law.

Plaintiff ostensibly alleges that all of the actions which form the basis of his discrimination and retaliation claims also created a hostile work environment. Plaintiff's salary decrease, loss of human resources responsibilities, suspension, and termination were discrete actions, rather than forms of harassment, and they are not properly within the province of a hostile work environment cause of action. Significantly, "[t]o defeat summary judgment on a hostile-work-environment claim, a plaintiff must produce evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment." Patterson v. Cty. of Oneida, 375 F.3d 206, 227 (2d Cir. 2004). Plaintiff does not allege that any Riverbay representative made any comments or insults about his race, age, or purported disability, nor does he allege any

treatment that would fall within the ambit of "intimidation, ridicule, and insult." Plaintiff does not even cite to any comments or treatment that would arise above the petty slights and trivial inconveniences standard of the NYCHRL. Thus Plaintiff fails to state a cognizable hostile work environment cause of action. See Brenner v. City of N.Y. Dep't of Educ., 659 Fed. Appx. 52, 54 (2d Dept. 2016) (affirming the dismissal of a plaintiff's hostile work environment claims under Title VII, the ADEA, and the ADA where the plaintiff failed to establish that he had been subjected to "the steady barrage of opprobrious comments sufficient to alter the conditions of [his] employment"), quoting Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015); Ben-Levy, 518 Fed. Appx. at 20 (affirming the dismissal of a plaintiff's hostile work environment causes of action under the ADEA, ADA, NYSHRL, and NYCHRL where the plaintiff "readily admits that no one at [the employer] made any comments, jokes, or insults about his age, medical condition, or leave").

Nevertheless, even if Plaintiff can show that Riverbay subjected him to treatment which would rise to an actionable level under any of the statutes at issue, for all of the reasons discussed, above, the record does not support an inference that Riverbay took any such action against Plaintiff on the basis of his race, age, or purported disability. Therefore, Plaintiff will be unable to establish a viable hostile work environment cause of action under Title VII, the ADA, the ADEA, the NYSHRL, or the NYCHRL. See Dotel v. Walmart Stores, Inc., 627 Fed. Appx. 42, 43 (2d Cir. 2016) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable under Title VII only when it occurs because of an employee's protected characteristic."); Thior v. Jetblue Airways, Inc., 2016 U.S. Dist. LEXIS 127388, at *12 (E.D.N.Y. Sept. 19, 2016). Thus, Plaintiff's hostile environment claims must be dismissed.

**POINT IV**     **PLAINTIFF CANNOT ESTABLISH HIS DEFAMATION *PER SE* CAUSE OF ACTION BECAUSE MR. TAYLOR'S STATEMENTS ARE PROTECTED BY THE COMMON-INTEREST PRIVILEGE.**

Plaintiff has also asserted a cause of action for defamation *per se* based upon statements which Mr. Taylor made as Board President to other Riverbay Board members and shareholders during the November 19, 2014 open Board meeting. Plaintiff alleges that when Mr. Taylor was apprising the attendees that Plaintiff had been caught performing work for other MSRE properties during Riverbay work time, Mr. Taylor stated that Plaintiff was guilty of "theft of services." (Pl. Dep. at 176). Additionally, Plaintiff alleges that when referring to Plaintiff's failure to seek Board approval before entering into certain insurance policies on behalf of Riverbay, Mr. Taylor referenced "three men in a basement" who were secretly negotiating deals to Riverbay's detriment (referring to Plaintiff, Mr. Cooper, and Mr. Friedman). (Pl. Dep. at 177). This comment was in reference to the fact that Defendants had recently learned that for years Plaintiff and MSRE had been improperly agreeing to multimillion dollar insurance policies for Riverbay without engaging in a competitive bidding process or seeking the Board's approval of these policies. (56.1 ¶ 68). Plaintiff alleges that these comments constitute defamation.

As an initial matter, Mr. Taylor testified that his comment regarding "theft of services" did not refer to Plaintiff, but rather was in reference to <u>MSRE's use of Plaintiff</u> during Riverbay time to perform work for MSRE's other properties. (Taylor Dep. at 107-08; 132-33). Plaintiff acknowledges that he was not present at the November 19, 2014 Board meeting and did not review any broadcasts of the meeting. (56.1 ¶ 87). Thus, Plaintiff's belief as to the content or meaning of Mr. Taylor's comment is entirely speculative and insufficient to create a material issue of fact in the face of Mr. Taylor's clear and undisputed testimony on the issue. <u>See</u>

Bennett, 2008 U.S. App. LEXIS 24441, at *4; McPherson, 457 F.3d at n.4 ("speculation alone is insufficient to defeat a motion for summary judgment").

Nevertheless, Riverbay is entitled to summary judgment on Plaintiff's defamation cause of action because Mr. Taylor's comments to fellow Riverbay Board members and shareholders are protected by the common-interest privilege. See Brooks v. Anderson, 2007 N.Y. Misc. LEXIS 8561 (BX Sup. Dec. 31, 2007) (Nelson S. Roman, J.) (dismissing a defamation claim brought against Riverbay by the Riverbay Board's Treasurer based upon statements which another Board member made in the Coop City newspaper, because the statements were made between board members and shareholders who all shared a corresponding interest, and were thus protected by the common interest privilege).

The common interest privilege protects comments made between individuals who possess a common interest in a particular subject. Id. at *22-23 (a "communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty"), quoting Stukuls v. State of New York, 42 N.Y.2d 272, 278-279 (1977). "The rationale underpinning the privilege is that absent abuse, the flow of information between people having a common interest should not be impeded." Brooks, 2007 N.Y. Misc. LEXIS 8561, at *23, citing Foster v. Churchill, 87 N.Y.2d 744 (1996). As Board President, Mr. Taylor had a fiduciary duty to the rest of the Board as well as Riverbay's shareholders to ensure that Riverbay's assets were protected. (56.1 ¶ 88). Thus, Mr. Taylor's statements were protected by the common interest privilege. See Brooks, 2007 N.Y. Misc. LEXIS 8561, at *34-35 ("To the extent that [the Riverbay Board member], and the board for that matter, were fiduciaries to Co-Op City's shareholders, the Court finds that [the Riverbay Board member] had a duty to report the events

regarding plaintiff's violations of the by-laws and the shareholders, who receive the Times, had an interest in receiving said information as the same pertained to those they elected to handle the administration of their residence.  As such, defendants have established prima facie entitlement to summary judgment based upon the common-interest privilege.").

To defeat the common interest privilege, Plaintiff would have to establish that Mr. Taylor's statements were made with "actual malice" or "common law malice."  Id. at 24-25.  To show actual malice, Plaintiff would have to demonstrate that Mr. Taylor had a "high degree of awareness" that the statements he made about Plaintiff were "probably false."  Id.  Importantly, "[n]ot knowing that something is true is not at all akin to knowing to a high degree of probability that something is false."  Id. at 25.  This is a subjective standard which "is measured not by whether a reasonably prudent person would have published or would have investigated prior to publishing a statement but whether the defendant actually believed that the statement was false."  Id.  Conversely, to show "common law malice" Plaintiff would have to establish that Mr. Taylor "was solely motivated by a desire to injure the plaintiff."  Id. at 35.  To that point, "if the intent to hurt the plaintiff was just one reason for the defamatory statement and the statement was also made to further the interest protected by the privilege, the statement is not actionable."  Id. at 36.

Plaintiff cannot establish actual or common law malice.  As to actual malice, there is absolutely no record evidence by which Plaintiff can establish that Mr. Taylor was subjectively confident that he was making untrue statements about Plaintiff.  This is an extremely high burden, and every comment at issue was based upon: (1) the abundance of documentary evidence that was found on Plaintiff's computer; and (2) Mr. Taylor's conversation with the York International representative who confirmed Mr. Taylor's suspicions.  (56.1 ¶ 47-

59, 67).  This precludes Plaintiff from showing that Mr. Taylor subjectively believed that the subject statements were most likely false.

As to common law malice, Plaintiff cannot show that Mr. Taylor's <u>sole</u> purpose in making the subject statements was to injure Plaintiff.  Plaintiff testified to the ongoing hostility Mr. Taylor harbored toward MSRE from even before he was elected President.  (56.1 ¶ 31). Moreover, Plaintiff testified that during the November 17, 2014 meeting when Mr. Taylor dismissed MSRE, he felt like he was an afterthought for Mr. Taylor.  (56.1 ¶ 65).  "[C]onclusory allegations, surmise, conjecture, and suspicion are insufficient to defeat the common-interest privilege."  <u>Id</u>. at *25, <u>citing</u> <u>Ferguson v. Sherman Square Realty Corp.</u>, 30 A.D.3d 288 (2nd Dept. 2006).  In light of Mr. Taylor's: (1) fiduciary obligations to keep his fellow board members and shareholders apprised of the information he had learned; and (2) undisputed disdain for MSRE, Plaintiff cannot show that Mr. Taylor's <u>sole</u> motivation in making the subject statements was to injure Plaintiff.

Thus, there is no basis by which Plaintiff could satisfy the extraordinarily high standard of demonstrating actual or common law malice so as to defeat the common interest privilege.  Therefore, Plaintiff's defamation cause of action must be dismissed as a matter of law.

**POINT V    PLAINTIFF CANNOT ESTABLISH HIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CAUSE OF ACTION BECAUSE IT ARISES FROM THE SAME FACTS AS HIS DEFAMATION CAUSE OF ACTION.**

Finally, Plaintiff's cause of action for intentional infliction of emotional distress ("IIED") must be dismissed.  As alleged in his Complaint, Plaintiff's IIED cause of action is based upon the same facts which form the basis of his defamation cause of action.  An IIED cause of action is not viable when it is based upon the same facts as a defamation cause of action. <u>See</u> <u>Brancaleone v. Mesagna</u>, 290 A.D.2d 467, 468 (2d Dept. 2002) ("The defendant also

correctly contends that the cause of action for intentional infliction of emotional distress should have been dismissed as duplicative of the cause of action for defamation"); Herlihy v. Metro. Museum of Art, 214 A.D.2d 250, 263 (1st Dept. 1995) ("the plaintiff's cause of action for intentional infliction of emotional distress must also fail because it falls within the ambit of other traditional tort liability which, in this case, is reflected in plaintiff's causes of action sounding in defamation"). Thus, Plaintiff's IIED cause of action should be dismissed as a matter of law.

However, even if Plaintiff's IIED cause of action was not legally barred, the record does not support such a cause of action. "Under New York law, IIED requires pleading the following four elements: (1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Margrabe v. Sexter & Warmflash, P.C., 353 Fed. Appx. 547, 550 (2d Cir. 2009). "The conduct at issue must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." Id. The conduct alleged "must consist of more than mere insults, indignities and annoyances." Leibowitz v. Bank Leumi Trust Co., 152 A.D.2d 169, 181-82 (2d Dept. 1989). Plaintiff does not allege any actions which would rise to the level of being "atrocious and utterly intolerable in a civilized society." Thus, Plaintiff cannot sustain an actionable IIED claim.

## CONCLUSION

Based upon the foregoing, Riverbay respectfully requests the Court to enter an Order: (1) dismissing Plaintiff's claims against Riverbay in their entirety and with prejudice; and (2) awarding Riverbay such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601

By: _____
Joseph A. Saccomano, Jr.
Isaac J. Burker

*ATTORNEYS FOR DEFENDANT
RIVERBAY CORPORATION*

Dated: April 14, 2017
White Plains, New York

31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

RONALD CAESAR,

                                    Plaintiff,

              -against-

                                                    Civ. No.:  1:15-cv-08911 (NRB)

RIVERBAY CORPORATION, CLEVE
TAYLOR, and BERNARD CYLICH,

                                    Defendants.
------------------------------------------------------------x

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Defendant Riverbay Corporation's

Memorandum Of Law In Support Of Motion For Summary Judgment has been served via ECF

and U.S. First Class Mail on the 14th day of April, 2017 on Counsel at the addresses of record set

forth below:

Russell S. Moriarty, Esq.
LEVINE & BLIT, PLLC
350 5th Avenue, Suite 3601
New York, New York  10118
(212) 967-3000
*Attorneys for Plaintiff*

Patrick Sardino, Esq.
John J. McDonough, Esq.
COZEN O'CONNOR
45 Broadway, 16th Floor
New York, New York  10006
*Attorneys for Defendants Cleve Taylor and Bernard Cylich*

_____
Joseph A. Saccomano, Jr.