UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
RONALD CAESAR,

               Plaintiff,

      - against -

RIVERBAY CORPORATION, CLEVE TAYLOR,
and BERNARD CYLICH,

              Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

15 Civ. 8911 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Following his termination in April 2015, plaintiff Ronald Caesar ("plaintiff"), who is African American, 68 years old, and suffers from glaucoma, initiated this action against Riverbay Corporation ("Riverbay") and its board President, Cleve Taylor ("Taylor"), and Treasurer, Bernard Cylich ("Cylich" and collectively, "defendants"). Plaintiff asserts claims for discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e _et seq._; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 _et seq._; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 _et seq._; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 _et seq._; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 _et seq._ Plaintiff also brings claims for defamation per se and intentional infliction of emotional distress. Defendants

now move for summary judgment on the entirety of the complaint. See ECF Nos. 25 (Riverbay), 34 (Taylor & Cylich). For the reasons discussed below, we grant defendants' motions with respect to plaintiff's Title VII, ADEA, ADA, and NYSHRL claims and dismiss without prejudice the remaining claims.

## Background[1]

In May 2003, Riverbay hired plaintiff as its director of risk management. Riverbay's 56.1 Statement ("Defs.' 56.1") ¶ 5.[2] Commonly known as "Coop City," Riverbay is a residential cooperative in the Bronx, New York. Id. ¶ 1. Plaintiff's job responsibilities included, *inter alia*, insurance procurement, review of legal claims brought against Riverbay, and outside vendor insurance compliance. Id. ¶ 9.

While technically an employee of Riverbay, plaintiff was at all times supervised by Marion Scott Real Estate, Inc. ("MSRE"). Herbert Freedman Affidavit ("Freedman Aff.") ¶ 6. Specifically, plaintiff reported to MSRE's general manager, Vernon Cooper ("Cooper"), who in turn reported to Herbert Freedman ("Freedman"), an MSRE principal. Defs.' 56.1 ¶¶ 12-13. As Riverbay's managing agent since 1999, MSRE was responsible for overseeing day-to-day

---

[1] The following facts are undisputed except where otherwise noted.

[2] Defendants Taylor and Cylich have adopted and incorporated Riverbay's Rule 56.1 Statement in its entirety. See ECF No. 36.

operations of the property, as well as hiring, firing, and directing a majority of Riverbay's employees. Id. ¶¶ 2-3. MSRE provided similar services to non-Riverbay properties, including Rochdale Village, 1199 Housing Corp., and Earl W. Jimerson Housing Company, Inc. Id. ¶ 4.

In 2013, a class action was filed against Riverbay alleging widespread underpayment of wages and overtime. Id. ¶ 25. According to management, these issues stemmed from the misclassification of employees (as independent contractors) under the Fair Labor Standards Act. Taylor Dep. 86:5-16. The misclassification had occurred because the directors of human resources over the preceding years had failed to properly update the employee manual. Id. 86:17-87:8. The lawsuit, which resulted in a settlement, cost Riverbay "about 7 to 8 million dollars." Id. 86:15-16. While not a named defendant in the action, plaintiff was directly implicated; he had overseen the human resources department at various times relevant to the litigation: from February to May 2005, and June to September 2008. Defs.' 56.1 ¶¶ 15-20. Moreover, beginning in July 2012, plaintiff served as the permanent director of human resources, in addition to his duties as director of risk management. Id. ¶¶ 21-24.

In June 2014, following a campaign featuring criticism of MSRE, Taylor was elected President of the Riverbay Board of Directors ("Riverbay Board"). Id. ¶¶ 29-31. Cylich was

simultaneously elected Treasurer. Id. ¶¶ 29-30. Shortly thereafter, Riverbay's outside accounting firm reported to Taylor and Cylich (inaccurately according to plaintiff, Plaintiff's 56.1 Statement ("Pl.'s 56.1") ¶ 32) that Riverbay was operating on a six-figure negative cash balance. Defs.' 56.1 ¶ 32. Accordingly, Taylor proposed a variety of cost-saving measures, including a hiring freeze, and eliminating the position of deputy chief of public safety. Id. ¶ 34. Further, upon reviewing the risk management department's budget, Cylich concluded "there was [sic] some increases in the department, and we thought perhaps they need[ed] to consider . . . some cuts in their department."[3] Cylich Dep. 39:12-19. Therefore, Taylor also proposed reducing the director's budget line by $70,000. Defs.' 56.1 ¶ 34. At a July 9, 2014 meeting, the Riverbay Board passed resolutions adopting all three of Taylor's recommendations.[4] Id. ¶ 36. Following the vote, plaintiff's salary was reduced by $70,000 to $80,000; Gerardo Blanco, the incumbent director of public safety, was terminated. Id. ¶¶ 38-40.

---

[3] Plaintiff contends that the risk management department's budget was, in fact, under budget for the fiscal year. Pl.'s 56.1 ¶ 35. That the department may have been under budget, however, does not mean that the budget had not increased over time.

[4] While defendants suggest that the Riverbay Board merely recommended a reduction in the risk management director's budget, and that it was MSRE's choice, in response, to reduce plaintiff's salary, the record seems clear that the Board's resolution gave MSRE no other choice. See, e.g., Moriarty Decl. Ex. E, at 2; Merola Dep. 33:9-34:14.

Plaintiff testified that, immediately thereafter, he complained to Taylor: "Basically I was saying, so you take the only African American director here and you just arbitrary cut my salary." Pl.'s Dep. 79:4-7; see id. 119:14-122:5. According to plaintiff, Taylor responded, "well, I have to look at this." Id. 79:15-19. While Taylor disputes that the conversation ever occurred, see Taylor Dep. 147:22-148:15, plaintiff's salary was partially restored several weeks later by $50,000. Defs.' 56.1 ¶ 45.

Concurrent to his salary restoration, plaintiff was demoted from his human resources responsibilities. Id. ¶ 42. Plaintiff's successor, ten years his junior, was Colette Ragin ("Ragin"), with whom he had a history: Ragin had previously served as director of human resources, from September 2008 to July 2012, at which point she was reassigned from within the company and plaintiff became the director. Id. ¶¶ 20-23, 43, 89-90. According to Freedman, Ragin's prior reassignment had been "due to ineffectiveness." Freedman Aff. ¶ 18. Ragin also had a relationship with Taylor; according to plaintiff, they were friends who had grown up together in Coop City. See Pl.'s Dep. 123:14-17.

Several months went by until, in November 2014, Taylor asked Freedman to provide him with proof that MSRE had obtained a fidelity bond naming Riverbay as an insured. Defs.' 56.1 ¶ 46. Freedman, in turn, forwarded an email chain containing the

requested information to Taylor, along with Riverbay's General Counsel, Jeffrey Buss ("Buss").   Id. ¶ 47.   Farther down in the chain, however, was a series of messages indicating that Caesar had been corresponding with an insurance broker about policies for three non-Riverbay properties.   Id.   The emails, relating to two properties otherwise managed by MSRE and one of plaintiff's personal properties, were sent from plaintiff's Riverbay email account during regular working hours.   Id. ¶ 50.

Riverbay retained Buss's law firm, Smith, Buss & Jacobs, LLP ("SB&J"), to conduct an investigation of plaintiff's work computer.   Id. ¶ 51.   The search ultimately revealed even more emails indicating that plaintiff had, among other things, attended meetings with insurance brokers regarding non-Riverbay properties and made recommendations to certain of those properties about switching insurance carriers.[5]   Id. ¶¶ 52-53; see id. ¶¶ 54-58. Plaintiff has testified that he did so at MSRE's, not Riverbay's direction.   See, e.g., Pl.'s Dep. 152:14-17.   On November 17, 2014,

---

[5] Plaintiff does not dispute having sent these emails or having engaged in the conduct they revealed; instead, he asserts that the time spent was minimal and that, because he had a flexible work arrangement—never taking a lunch break, working more than ten hours per day, using his ample spare time—of which Taylor and Cylich were aware, the emails were not sent during "Riverbay hours."   Pl.'s 56.1 ¶¶ 50-53.   He also contends that the tasks indirectly benefitted Riverbay.   See Pl.'s Dep. 163:4-165:2.   According to Freedman, "Taylor and Cylich were well aware that many Riverbay employees interacted with and exchanged information with their counterparts at other MS[RE]-managed, non-Riverbay properties, as this practice allowed Riverbay employees to keep up-to-date with the latest information and ensure best practices in their positions at Riverbay."   Freedman Aff. ¶ 29.

plaintiff, in addition to MSRE, was suspended immediately and indefinitely.  Defs.' 56.1 ¶¶ 60-64.

Two days after plaintiff's suspension began, Taylor reported his dissatisfaction with MSRE and plaintiff at a Riverbay Board meeting open to shareholders.  Id. ¶¶ 69-70.  Taylor stated that plaintiff had engaged in a "theft of services" by performing non-Riverbay work on Riverbay time.  Pl.'s Dep. 176:3:15.  And, concerning another allegation—that MSRE had improperly awarded insurance contracts—Taylor asserted that "three men in a basement" at MSRE had awarded no-bid insurance contracts to Riverbay's detriment.  Id. 175:8-15.[6]  Thereafter, the Riverbay Board passed a resolution concurring with Taylor's decision to suspend MSRE and plaintiff, and directing SB&J to further investigate MSRE and plaintiff's purported misconduct.  Defs.' 56.1 ¶ 71.  The outcome of this meeting, as well as Taylor's remarks about MSRE and plaintiff, were reported in the "City News," "The Newspaper of Co-Op City," on November 27, 2014.  See Declaration of Russell S. Moriarty ("Moriarty Decl."), Ex. K.

As part of SB&J's subsequent investigation, plaintiff was interviewed in the presence of his counsel.  According to Buss's

---

[6] Plaintiff believes Taylor was referring to him, along with Cooper and Freedman, as being among the "three men in the basement."  See Pl.'s Dep. 175:8-15.  Further, he contends that Taylor's assertions about the no-bid insurance contracts are inaccurate.  Pl.'s 56.1 ¶ 68.

report, plaintiff freely admitted to performing work for MSRE's

other properties on Riverbay time.  Buff Aff. Ex. A, at 33.  As

Buss's report concluded:

> A review of the emails and the attachments establish
> that real and substantial work was being performed by
> [plaintiff] for the benefit of MS[RE] during regular
> work hours when [plaintiff] was being paid by
> Riverbay.  The email exchanges were not simply "see
> attached."  Rather, they evidence the fact that detailed
> comparisons and analyses were being performed, work that
> would, upon information and belief, involve a
> substantial time commitment to complete. . . . [I]n the
> opinion of General Counsel, the amount of time spent
> reviewing and analyzing quotations, loss runs, claim
> histories, and complex commercial leases; composing and
> drafting responses; and speaking on the phone with
> regard to these matters; was significant.  None of that
> time was Riverbay related.

Id. at 33-34.  Plaintiff was terminated on April 2, 2015, soon

after SB&J reported its finding to the Riverbay Board.  Defs.'

56.1 ¶¶ 77-78.

## Discussion

A motion for summary judgment may be granted if there is no

genuine dispute as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

A fact is "material" when it "might affect the outcome of the suit

under governing law"; an issue of fact is "genuine" if the

"evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).

It is generally "the movant's burden to show that no genuine factual dispute exists." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If, however, the burden of proof at trial would fall on the nonmoving party, "it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013)(internal quotation marks omitted). To survive summary judgment, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." Id. At this stage, we are to resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The Second Circuit has "repeatedly emphasized 'the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.'" Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010)(quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)). However, because its "salutary purposes" apply with equal force in the employment context, Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), summary judgment "remains available . . . in cases lacking genuine issues of material fact." Agostinello v. Great Neck Union Free

9

Sch. Dist., 353 F. App'x 589, 590 (2d Cir. 2009) (internal quotation marks omitted).

## I.   Federal Discrimination Claims

Plaintiff's complaint asserts discrimination claims under Title VII, the ADEA, and the ADA;[7] each is analyzed pursuant to the burden shifting framework originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (Title VII racial discrimination).  See Gorzynski, 596 F.3d at 105-07 (ADEA); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)(ADA). Under this framework, a plaintiff must first establish a prima facie case of discrimination with respect to Title VII and the ADEA by showing, by a preponderance of the evidence, that:

> (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class.

---

[7] Plaintiff's complaint asserts claims under Title VII, the ADEA, and the ADA against *all* defendants.  See, e.g., Compl. at 13.  However, none of these statutes provide for liability against individuals (i.e., Taylor and Cylich) as opposed to an employer-entity (i.e., Riverbay).  See Darcy v. Lippman, 356 F. App'x 434, 437 (2d Cir. 2009) (ADA); Cherry v. Toussaint, 50 F. App'x 476, 477 (2d Cir. 2002) (ADEA); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) (Title VII), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); see also ECF No. 45 at 3 (recognizing that plaintiff's claims against Taylor and Cylich are foreclosed under Title VII and the ADA, but not mentioning the ADEA).  Therefore, plaintiff's claims against Taylor and Cylich under those statutes are dismissed.  Because the NYSHRL and NYCHRL, by contrast, may provide for individual liability, those claims are not dismissed on that basis.  See Mandell v. Cty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003)(NYSHRL); Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012)(NYCHRL).

Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002).

Similarly, plaintiff establishes a prima facie case with respect to disability discrimination by proving, by a preponderance of the evidence, that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

Sista, 445 F.3d at 169.  "Under the last element," as with Title VII and ADEA claims, "a plaintiff must show that the adverse employment action took place under circumstances giving rise to an inference of discrimination."  Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015) (internal quotation marks omitted).

The prima facie burden is not "onerous" and, if satisfied, a presumption of discrimination arises.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981); Mario, 313 F.3d at 767. The burden then shifts to defendants "to proffer some legitimate, nondiscriminatory reason" for the adverse employment action. Mario, 313 F.3d at 767.  If defendants, in turn, satisfy their burden, the presumption created by the prima facie case "drops out of the analysis."  Id.  Defendants will be entitled to summary judgment unless plaintiff proves, by a preponderance of the evidence, "that the legitimate reasons offered by the defendant[s] were not [their] true reasons but were a pretext for discrimination."  Id. (quoting Reeves v. Sanderson Plumbing

<u>Prods., Inc.</u>, 530 U.S. 133, 143 (2000)).

### A. Plaintiff's Salary Reduction

Defendants do not dispute that plaintiff has satisfied the first three elements of his prima facie case with respect to his July 2014 salary reduction: he is a member of three protected classes by virtue of his race (African American), age (65 at the relevant time), and disability (glaucoma[8]); he was "competent" to perform, and was, with or without reasonable accommodation, "qualified to perform the essential functions of," his role as director of risk management and human resources; and a salary reduction constitutes an adverse employment action.

The circumstances that can give rise to an inference of discrimination, the fourth element of plaintiff's prima facie case, include:

> Actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, preferential treatment given to employees outside the protected class, . . . a pattern of recommending the plaintiff for positions for which he or she is not qualified[,] and failure to surface plaintiff's name for

---

[8] Plaintiff testified that his "vision is almost permanently gone. . . . [M]y glaucoma is very acute, right angle glaucoma is acute. I have loss of vision, 70 percent in the right eye and probably 40 percent in the left eye. My direct vision is limited." Pl.'s Dep. 13:25-14:10. While Taylor and Cylich both testified that they were unaware of plaintiff's disability, Defs.' 56.1 ¶¶ 82-83, plaintiff testified that Cylich and Taylor "should have known" he suffered from glaucoma because he walked into walls and kicked down signs, Pl.'s Dep. 84:21-85:2. And Freedman attested that "Mr. Caesar, upon information and belief . . . had a noticeable disability in that it was obvious that he was suffering from impaired vision." Freedman Aff. ¶ 10. While this creates an issue of fact, summary judgment remains appropriate because plaintiff has offered no evidence that defendants, even if aware of his disability, discriminated against him on this basis.

positions for which he or she is well-qualified.  A
plaintiff might also rely upon the fact that the
defendant, following plaintiff's termination, continued
to seek applicants to fill the position, or, more
generally, upon the timing or sequence of events leading
to the plaintiff's termination.

Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir.
1996) (citations omitted); accord Chang v. Metroplus Health Plan,
No. 12 Civ. 3181(WHP), 2014 WL 842635, at *7 (S.D.N.Y. Mar. 4,
2014), aff'd, 590 F. App'x 74 (2d Cir. 2015).

Plaintiff asserts that an inference of discrimination arises
because defendants subjected him to disparate treatment, "that
is, treated him less favorably than a similarly situated employee
outside his protected group." Diggs v. Niagra Mohawk Power Corp.,
691 F. App'x 41, 43 (2d Cir. 2017)(citing Graham v. Long Island
R.R., 230 F.3d 34, 39 (2d Cir. 2000)).  To raise an inference of
discrimination via disparate treatment, "the plaintiff must show
[]he was 'similarly situated in all material respects' to the
individuals with whom []he seeks to compare h[im]self." Graham,
230 F.3d at 39.  "Although the ultimate burden in making a prima
facie case is slight, the issue of whether fellow employees are
similarly situated is somewhat strict." Desir v. Bd. of Coop.
Educ. Servs (BOCES) Nassau Cty., 803 F. Supp. 2d 168, 180 (E.D.N.Y.
2011)(internal quotation marks omitted), aff'd, 469 F. App'x 66
(2d Cir. 2012).  The court's analysis necessitates "an objectively
identifiable basis for comparability between the plaintiff and

the comparator employee.'" <u>Zuk v. Onodaga Cty.</u>, 471 F. App'x 70, 71 (2d Cir. 2012)(internal quotation marks omitted).[9]  In other words, for an inference of discrimination to arise, plaintiff must show that a fellow employee who is (1) substantially younger,[10] not disabled, and/or not African American, and is (2) otherwise similarly situated to him in all material respects, did not (3) suffer the same employment consequence.  Plaintiff has failed to do so.

Plaintiff has listed the names and races of several of his fellow directors, none of whom were subjected to a pay reduction:  Mary Allan (director of IT, "Caucasian"); Annmarie Filizzola (general counsel, "Caucasian"); Peter Jordan (head of restorations, "Caucasian"); Louise LaScalsa (position unknown, "Caucasian"); Peter Merola ("Merola") (head of finance, "Caucasian"); Donovan Plumber (director of buildings and grounds, "Jamaican"); Colette Ragin (position unknown, "African

---

[9] As a "general rule," whether employees are "similarly situated is a factual issue that should be submitted to the jury." <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 n.2 (2d Cir. 2001).  "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." <u>Id.</u>

[10] A person is a member of the "protected class" under the ADEA if he is at least 40 years of age.  29 U.S.C. § 631(a).  But with respect to creating inferences on the basis of disparate treatment, the test is whether the employee who receives preferential treatment is "substantially younger" than plaintiff, not whether he is above or below the age of 40.  <u>See</u> <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 517 U.S. 308, 313 (1996).  In the Second Circuit, that test is satisfied by a difference of as little as eight years.  <u>See</u> <u>D'Cunha v. Genovese/Eckerd Corp.</u>, 479 F.3d 193, 195 (2d Cir. 2007).

American"); Tony Rasulo (head of construction, "Caucasian"); Brian Reardon (head of power plant, "Caucasian"); Luis Salazar (head of janitors, "Hispanic"); Mike Sanders (head of maintenance, "Caucasian"). Pl.'s Dep. 35:23-38:2; 116:17-117:10.  Two of these employees, Merola (54) and Ragin (55), are substantially younger the plaintiff.  Defs.' 56.1 ¶¶ 74, 90.  Plaintiff testified that he and Plumber were the only directors who suffered from disabilities.[11]  See Pl.'s Dep. 190:2-22.  But plaintiff cannot demonstrate that he is "similarly situated in all material respects" to the fellow employees he has named because he has offered no additional information about them.  He has not adduced any evidence as to their job duties, responsibilities, assignments, disciplinary records, length of service, salaries, or departmental budgets.  See Fahrenkrug v. Verizon Servs. Corp., 652 F. App'x 54, 56 (2d Cir. 2016)(Plaintiff did not demonstrate disparate treatment because she "did not submit any evidence pertaining to her male peers' job duties, assignments, bonuses, or salary increases."); Gelin v. Geithner, No. 06-CV-10176 (KMK), 2009 WL 804144, at *18 (S.D.N.Y. Mar. 26, 2009)("While Plaintiff has submitted evidence to show that Becker and Capalbo were GSL-13 RAs, he has produced no evidence to show that they were

---

[11] Mr. Plumber "was getting dialysis twice or three times a week," for which he was taking "time out from Riverbay," which was "something that was obviously observed by others."  Pl.'s Dep. 190:15-22.

similarly situated to him in terms of the quality of their performance, their disciplinary records, or other material factors relevant to deciding whether to assign managerial responsibilities."), aff'd, 376 F. App'x 127 (2d Cir. 2010); Chan v. NYU Downtown Hosp., No. 03 Civ. 3003(RMB), 2006 WL 345853, at *5 (S.D.N.Y. Feb. 14, 2006) (Plaintiff "fails to provide any information about whether she and this employee were similarly situated in terms of duties, responsibilities, etc."). It is simply impossible for plaintiff to demonstrate that he is similarly situated to any substantially younger, not disabled, and/or not African American employees whose salaries were not reduced because he has failed to explain how those employees are themselves situated.

Not only is the record devoid of evidence to infer discrimination, it contains ample evidence militating *against* such a conclusion. Gerardo Blanco, who is Hispanic, was treated less favorably than plaintiff: his position was eliminated. Defs.' 56.1 ¶¶ 34, 39-40. Additionally, most of the board members who voted in favor of plaintiff's salary reduction were themselves African American. Pl.'s Dep. 201:23-203:9; see Waters v. Gen. Bd. of Glob. Ministries, 769 F. Supp. 2d 545, 554 (S.D.N.Y. 2011) ("[W]here plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes . . . discrimination is weakened."); Bauger v.

Spanish Broad. Sys., Inc., No. 04 Civ. 8393(RJS), 2010 WL 2813632, at *11 (S.D.N.Y. July 12, 2010), aff'd, 423 F. App'x 102 (2d Cir. 2011); Browne v. CNN Am., Inc., No. 98 CIV. 1768(JSM), 1999 WL 1084236, at *4 (S.D.N.Y. Dec. 1, 1999), aff'd, 229 F.3d 1135 (2d Cir. 2000). Similarly, Taylor (57-58)[12] and Cylich (73), whom plaintiff asserts instigated his salary reduction, are of a similar age as, if not older than, plaintiff.[13] Taylor Dep. 11:14-15; Cylich Dep. 68:21-22; see Waters, 769 F. Supp. 2d at 554.

Because plaintiff has not established an inference of discrimination with respect to his salary reduction, we need not proceed any farther in our analysis. See Fahrenkrug, 652 F. App'x at 56 (Failure to establish any one of the "necessary elements" of the prima facie case of discrimination "mandates dismissal" of the plaintiff's complaint.).

### B. Plaintiff's Demotion

We next consider plaintiff's complaint that his demotion was the result of discrimination. That plaintiff was replaced by someone outside of his protected class, i.e., someone who is not

---

[12] Taylor was asked his age at the time of his deposition rather than his birthdate. See Taylor Dep. 11:14-15.

[13] Defendants have contended that no inference of discrimination exists with respect to age because Cylich and Taylor are 76 and 60 years old respectively. See ECF No. 26 at 21 ("Plaintiff's allegation that his age played any factor in his salary reduction is refuted by the fact that Mr. Taylor is 60 years old and Mr. Cylich is 76 years old."). However, that is how old they are now, not at the time of the relevant events.

African American, not disabled, and/or is substantially younger, will suffice to establish an inference of discrimination at the prima facie stage. Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). Therefore, that plaintiff's successor, Ragin, is ten years his junior and is not disabled, Defs.' 56.1 ¶¶ 89-90; see Pl.'s Dep. 190:2-22, is sufficient to establish an inference of discrimination with respect to the ADEA and ADA, respectively.[14]  See D'Cunha, 479 F.3d at 195; Natofsky v. City of N.Y., No. 14 Civ. 5498 (NRB), 2017 WL 3670037, at *11 (S.D.N.Y. Aug. 8, 2017). By contrast, that plaintiff and Ragin are both African American, Pl.'s Dep. 114:11-13, precludes finding an inference of discrimination with regards to race. See Pearson v. Lynch, No. 10 Civ. 5119(RJS), 2012 WL 983546, at *8 (S.D.N.Y. Mar. 22, 2012); DeJesus v. Dist. One Cmty. Educ. Council, No. 08 Civ. 10666(GBD), 2010 WL 3959624, at *4 (S.D.N.Y. Sept. 14, 2010); Pilgrim v. McGraw-Hill Cos., 599 F. Supp. 2d 462, 480 (S.D.N.Y. 2009).

Since plaintiff has satisfied his prima facie burden with

---

[14] The Second Circuit has held that "where a plaintiff relies on a substantial age discrepancy between h[im]self and h[is] replacement, []he must adduce some evidence indicating defendants' knowledge as to that discrepancy." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82-83 (2d Cir. 2005).  Yet if such knowledge is, as here, undisputed, "a court need not specifically address this point; rather, it may be assumed."  Id. at 83.  Accordingly, we assume defendants' awareness of plaintiff's and Ragin's ages.  See Brooks v. Leake & Watts Org., Inc., No. 02 Civ. 9865(GEL), 2005 WL 1875772, at *8 n.3 (S.D.N.Y. Aug. 2, 2005)(making such an assumption where the relevant employees "were already in defendant's employ at the time" and "personnel records were kept").

respect to age and disability, defendants must proffer a legitimate, non-discriminatory reason for the demotion. Defendants satisfy this minimal burden: Taylor testified at his deposition that both the demotion decision and the decision to replace plaintiff with Ragin were made by Freedman and MSRE and that his role was limited to one of approval.[15]  See Taylor Dep. 78:24-85:12.

Because defendants have articulated a legitimate reason for plaintiff's demotion, the burden shifts back to plaintiff to "demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004)(quoting Burdine, 450 U.S. at 253)).  To survive summary judgment under the ADEA, "plaintiff must demonstrate that a reasonable jury could conclude by a preponderance of the evidence that the employer's explanations are pretextual and that, but for the plaintiff's age, the employer would not have taken the action it did."  Chapotkat v. Cty. of Rockland, 605 F. App'x 24, 26 (2d Cir. 2015)(emphasis added).  It

---

[15] We recognize that there are arguments to be made to challenge defendants' explanation for plaintiff's demotion.  For example, while Taylor testified that he believed the idea to promote Ragin over plaintiff was a "good recommendation" because it came from MSRE, Taylor Dep. 85:4-12, he also claims to have been a frequent critic of MSRE, see Defs.' 56.1 ¶ 30.  However, summary judgment remains appropriate given the absence of any other evidence to suggest a discriminatory motivation for plaintiff's demotion.

is not enough for plaintiff to prove defendants had "mixed-motives," only one of which was discriminatory.  See Gross v. FBL Fin. Servs., 557 U.S. 167, 180 (2009).

Plaintiff testified that Ragin was chosen as his successor because (1) she had "solicit[ed] the help of Mr. Taylor.  She grew up in the Co-op also, and basically they called each other . . . friends"; and (2) "[s]he was a younger woman I think in her 40s." Pl.'s Dep. 123:10-20.  Plaintiff's first reason, which is akin to nepotism, is not actionable.  Washington v. Garage Mgmt. Corp., No. 11 Civ. 3420(CM), 2014 WL 2989947, at *9 (S.D.N.Y. July 1, 2014) ("It is well-established that nepotism is not actionable under the federal anti-discrimination statutes."); Rebele v. Potter, 818 F. Supp. 2d 534, 538 (E.D.N.Y. 2011); Sogliuzzo v. Int'l Bhod. of Teamsters, 514 F. Supp. 277, 278-80 (S.D.N.Y. 1981). Plaintiff concedes that his second reason, Ragin's juniority, is merely speculative.  See Pl.'s Dep. 123:18-20 ("She was a younger woman I think in her 40s and, you know, I can't tell you specifically what made him push that issue.  I can't really.  It would be pure speculation on my part."); see also id. 123:5-9 ("Q: Okay. Do you have any knowledge of any facts as to why Mr. Taylor wanted Colette Ragin restored into the director of human resources position? A: You say facts, no.").  Plaintiff's speculation is, as a matter of law, insufficient to defeat a motion for summary judgment.  See, e.g., McPherson v. N.Y.C. Dep't of Educ., 457 F.3d

211, 215 n.4 (2d Cir. 2006); Ying Jing Gan v. City of N.Y., 956
F.2d 522, 532 (2d Cir. 1993).  Finally, even if he were able to
prove, by a preponderance of the evidence, that defendants' twin
motives were nepotism, which is legal, and Ragin's juniority, which
is not, plaintiff would still not prevail under the ADEA: he would
only have shown that age was one of, not the "but for" cause, of
Ragin's promotion.  See Gross, 557 U.S. at 180.

     With respect to proving pretext under the ADA, it remains an
open question in the Circuit whether "but for" causation is
required, or whether establishing that defendants had mixed-
motives, one of which was discriminatory, is sufficient.  See
Nazario v. Promed Personnel Servs. NY Inc., No. 15 Civ. 6989 (LGS),
2017 WL 2664202, at *3 (S.D.N.Y. June 19, 2017) (citing Forrester
v. Prison Health Servs., 651 F. App'x 27, 28 (2d Cir. 2016)).  We
need not decide this issue because plaintiff has not demonstrated
that disability discrimination played *any* role in his demotion.

     Even when presented the opportunity at his deposition,
plaintiff did not testify that his disability played a role in his
demotion.  See Pl.'s Dep. 123:10-20 (attributing plaintiff's
demotion to Ragin's age and connection to Taylor).  Nor did
plaintiff testify that Taylor, Cylich, or anyone else made any
comments to him—or to others—about his eye condition.  See id.
189:16-25.  Indeed, the only "evidence" of discriminatory intent
to which plaintiff points is a commonplace and benign exchange in

which Cylich asked if plaintiff could see a bag of dirt in the hall outside of his office. See id. 85:3-15. Moreover, plaintiff has not asserted that he sought, or even needed, an accommodation. In fact, at his deposition, plaintiff stated that "when you give me documents it may take me a little while to read with my glasses and I also have a magnifying glass to try and help." Id. 14:2-5. The record is simply devoid of evidence to suggest that disability discrimination played a role in his demotion.

Plaintiff is unable, as a matter of law, to establish that defendants' proffered reason for his demotion is mere pretext for discrimination on the basis of his age or disability. Accordingly, both claims fail.

### C. Plaintiff's Suspension and Termination

Finally, plaintiff alleges that his termination and suspension were the result of discrimination. However, plaintiff is once again unable to demonstrate an inference of discrimination with respect to either. There is no evidence in the record that he was replaced by someone who is not African American, not disabled, and/or substantially younger than he is. Nor is there evidence that, "following plaintiff's termination, [Riverbay] continued to seek applicants to fill the position." Chertkova, 92 F.3d at 91. Indeed, the record is silent as to by whom, if anyone, plaintiff has been replaced.

Nonetheless, plaintiff seeks to demonstrate an inference of discrimination by way of establishing disparate treatment. Specifically, plaintiff argues that Merola, who is Caucasian, not disabled, and substantially younger than him, remains at Riverbay despite having testified that he sent non-Riverbay work emails during Riverbay work-time. To raise an inference of discrimination via disparate treatment, "plaintiff must show []he was 'similarly situated in all material respects' to the individuals with whom []he seeks to compare h[im]self." Graham, 230 F.3d at 39. Whether two employees are similarly situated with regards to misconduct "must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." Id. at 40. "The determination that two acts are of comparable seriousness requires—in addition to an examination of the acts—an examination of the context and surrounding circumstances in which those acts are evaluated." Id. "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." Id.

No reasonable jury could conclude that plaintiff and Merola's conduct were of comparable seriousness. Merola met *once* with an employee of another MSRE property, in 1999 or 2000, soon after

MSRE became Riverbay's managing agent. Merola Dep. 59:20-
60:11. The two "talked about how they do business, financial
aspects of the business and how we both kind of compared notes and
shared thoughts and how we conducted business, systems that we
used." Id. 60:12-18. Merola testified that they may have
exchanged a few telephone calls, and/or emails, after the meeting;
the last time was five to ten years prior to Merola's 2016
deposition. Id. 62:2-19; 63:2-64:4.

By contrast, plaintiff admits to having frequently (and
recently) done *actual work* for MSRE's non-Riverbay properties:
1199 Housing Corp., Rochdale Village, and Early W. Jimerson Housing
Company, Inc. Specifically, he (1) spoke with insurance brokers
about policies for non-Riverbay properties, see Pl.'s Dep. 149:16-
153:9; (2) consulted with risk managers at non-Riverbay properties
about insurance renewal needs, participating in their decision
making to select particular insurance brokers, see id. 153:10-
156:13, 158:16-159:6; (3) communicated with human resources
officers at non-Riverbay properties, referring them to resources
for health insurance policy renewals, see id. 159:7-162:24; and
(4) reviewed insurance policy proposals for non-Riverbay
properties, see id. 165:3-166:16. Plaintiff acknowledged that
MSRE, not necessarily Riverbay, would benefit from his efforts:

> Q. [I]sn't it also true that in doing tasks you were
> using your knowledge at Riverbay to benefit Rochdale,
> isn't that true? . . . You're alerting the director of

24

> human resources at Rochdale that there might be
> something there for her to look at. A. Yes. Q. So it was
> a two-way street? A. Okay, yes. Q. And the benefactor of
> that, of you giving the knowledge of Rochdale, wasn't
> Marion Scott a benefactor of that because they were using
> your time to benefit their other properties? A. They
> have, they could have benefitted no doubt about it
> depending on if it benefitted them.

Id. 163:9-164:2.  As he candidly testified, "[a]nything I did I did because Marion Scott, *my employer*, asked me for opinions." Id. 152:16-17 (emphasis added).  Yet it is not without some irony that plaintiff asserts in this litigation that Riverbay, not MSRE, was his employer.  See ECF No. 41 at 7 (citing Freedman Aff. ¶ 6).  Plaintiff's disloyalty to Riverbay is categorically different from Merola's one-time meeting with an MSRE employee of a different property.

Because plaintiff cannot demonstrate disparate treatment, or any other means of establishing an inference of discrimination, he cannot satisfy his prima facie case of discrimination with respect to his suspension or termination.

## II.  Federal Retaliation Claims

Plaintiff asserts that his termination in April 2015 was in retaliation for having (1) confronted Taylor in July or August 2014 with the accusation that his salary reduction was only done to him because he was the oldest and only African American, director, and (2) submitted a "complaint of discrimination and harassment" to Riverbay on January 15, 2015.  See Pl.'s Dep. 79:4-

7; 119:14-122:5; 145:18-146:9.

Retaliation claims under Title VII, the ADEA, and the ADA[16] are analyzed pursuant to the McDonnell Douglas burden shifting framework.  See Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006)(ADEA); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002)(ADA); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001)(Title VII). The plaintiff's prima facie case in this context is comprised of four elements: (1) that plaintiff was engaged in a protected activity; (2) the alleged retaliator knew plaintiff was involved in that activity; (3) an adverse decision or course of action was taken against plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002).  If satisfied, the burden shifts to defendants to proffer a "legitimate, non-retaliatory reason" for the adverse employment

---

[16] Plaintiff's complaint only includes allegations of retaliatory termination under the ADA (along with the NYSHRL and NYCHRL).  Compl. ¶¶ 169-87.  It is generally inappropriate to raise new claims (i.e., under the ADEA and Title VII) for the first time in a submission in opposition to a motion for summary judgment.  See Thomas v. Egan, 1 F. App'x 52, 54 (2d Cir. 2001). Otherwise, the moving party will have been deprived of the opportunity to properly respond to those claims.  This is not such a case; all parties misread the complaint and briefed the retaliation claims as if they encompassed causes of action under all three of the federal (and state and municipal) statutory schemes.  See ECF Nos. 26 at 25-30; 35 at 10; 41 at 30-32.  Therefore, we consider plaintiff's retaliation claims under Title VII, the ADEA, and the ADA. Granting plaintiff leave to amend his complaint, another option at this Court's disposal, Thomas, 1 F. App'x at 54, would be futile.  See Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011)(holding that leave to amend not need to be granted where the proposed amendment would be futile).

decision.  Treglia, 313 F.3d at 721.  Plaintiff, then, must "point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  Id.

The parties dispute whether plaintiff's complaint to Taylor following his salary reduction constitutes protected activity.  In this regard, plaintiff is not required to prove that the conduct about which he complained was actually illegal in order to establish that his complaint itself constituted protected activity.  Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).  What is required, however, is that plaintiff had an objective, "good faith, reasonable belief" that the employer's actions about which he complained "violated the law."  Id.; see Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 16-17 (2d Cir. 2013)("Mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by *objective* good faith." (quoting Sullivan-Weaver v. N.Y. Power Auth., 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000))).

As we have already determined, there is virtually no evidence in the record indicating that plaintiff's salary reduction, the conduct about which he complained to Taylor, was the product of discrimination.  See Section I(A), supra.  Indeed, the evidence in the record points to the *opposite* conclusion.  See id.  Given the

27

weakness of plaintiff's evidentiary offering, a reasonable jury could not conclude that plaintiff had an objective, good faith, reasonable belief that his salary reduction was discriminatory. Accordingly, any complaint plaintiff made to Taylor on that basis would not constitute protected activity.

The only basis plaintiff suggests for finding the requisite causal connection with respect to the remaining protected activity, plaintiff's January 15, 2015 letter, is the chronology. ECF No. 41 at 30-32.  A plaintiff may indirectly prove causation by "showing that the protected activity was closely followed in time by the adverse [employment] action."  Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996); see Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that the cases accepting temporal proximity as evidence of causality require that the two events be "'very close'").  The Second Circuit has declined to draw a "bright line" to define the outer limits beyond which a temporal relationship is too attenuated to establish causation. Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001).  District courts within this Circuit, however, have frequently held that anything greater than two months exceeds those limits.  See, e.g., Baldwin v. Goddard Riverside Cmty. Ctr., 53 F. Supp. 3d 655, 670 (S.D.N.Y. 2014), aff'd, 615 F. App'x 704 (2d Cir. 2015); Garrett v. Garden City Hotel, Inc., No. 05-CV-0962(JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19,

2007); <u>Yarde v. Good Samaritan Hosp.</u>, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

Plaintiff was terminated on April 2, 2015, two months and two weeks after sending his complaint letter to Riverbay.    If plaintiff's January complaint to Riverbay was viewed in isolation, this timing might be sufficient to establish the requisite inference of causation.  However, no reasonable jury could conclude that plaintiff's January complaint, which was preceded by a demotion (five months prior) and suspension (two months prior), was the cause of his April termination.  <u>Cf.</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001)("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").  By the time plaintiff complained of discrimination, defendants already had ample cause for his termination, as evidenced by the previous adverse employment actions.  Indeed, plaintiff's termination came only after more evidence was uncovered that confirmed defendants' basis for plaintiff's suspension.  To infer a causal nexus here would be to permit plaintiff to manufacture a claim of retaliation simply by complaining in advance of a termination that is already well in

the making.

Because plaintiff is unable to establish the requisite inference of causation, he has not established a prima facie case of retaliatory termination.  Accordingly, his retaliation claim fails.

### III. Federal Hostile Work Environment Claims

"[F]rom the moment they took over Riverbay," plaintiff alleges, Taylor and Cylich targeted him with a salary reduction, demotion, suspension, termination and "hostile media statements." ECF No. 41 at 33.  According to plaintiff, this "series of adverse and hostile actions" created a legally actionable hostile work environment.  Id.

A hostile work environment claim under Title VII, the ADEA, and the ADA[17] requires a plaintiff to show, *inter alia*, that his "'workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Gorzynski, 596 F.3d at 102 (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006))(Title VII);

---

[17] The Second Circuit has yet to decide whether hostile work environment claims are cognizable under the ADA.  See Lawson v. Homenuk, No. 16-3736-cv, 2017 WL 4534779, at *2 (2d Cir. Oct. 11, 2017).  Several other circuits have recognized such claims.  Cf. Lanman v. Johnson Cty., 393 F.3d 1151, 1155 (10th Cir. 2004); Shaver v. Indep. Stave Co., 350 F.3d 716, 719 (8th Cir. 2003); Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 232-35 (5th Cir. 2001); Fox v. Gen. Motors Corp., 247 F.3d 169, 175-76 (4th Cir. 2001).

Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999)(ADEA); Christiansen v. Omnicom Grp., Inc., 167 F. Supp. 3d 598, 613 (S.D.N.Y. 2016)(ADA), rev'd on other grounds, 852 F.3d 195 (2d Cir. 2017).  It is "axiomatic" that "in order to establish a . . . hostile work environment claim" a plaintiff "must demonstrate that the conduct occurred because of" his race, age, or disability.  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

Plaintiff comes nowhere close to meeting this threshold.  With one exception, the hostile work environment claim simply relies on the four events which form the basis of plaintiff's discrimination and retaliation claims: the salary reduction, demotion, suspension, and termination.  Cf. Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 590 (S.D.N.Y. 2011)(dismissing a discrimination claim where it was duplicative of a hostile work environment claim).  Actions such as these are not the province of a hostile work environment claim.

The "hostile media statements" refer to the remarks Taylor made at the Riverbay Board meeting on November 19, 2014—that plaintiff had engaged in a "theft of services" and was among the "three men in a basement" awarding no-bid insurance contracts—which were republished in the "City News" on November 27, 2014.  See Pl.'s Dep. 174:15-175:15; Moriarty Decl. Ex. K.  No reasonable jury could conclude, on the basis of these remarks, that plaintiff

was subjected to a hostile work environment.  First, isolated acts, unless exceedingly serious, do not satisfy the requisite severity or pervasiveness.  <u>Alfano</u>, 294 F.3d at 374.[18]  Second, plaintiff has not explained how Taylor's comments were related in any way to his race, age, or disability.  <u>See</u> <u>Ben-Levy v. Bloomberg, L.P.</u>, 518 F. App'x 17, 20 (2d Cir. 2013)("Ben-Levy readily admits that no one at Bloomberg made any comments, jokes, or insults about his age, medical condition, or leave.")  Third, Taylor's November 19, 2014 remarks were made two days after plaintiff's suspension from which he never returned.  Pl.'s Dep. 175:16-176:2.  Thereafter, plaintiff no longer *had* a work environment that could be rendered hostile.  <u>See</u> <u>Ruggerio v. Dynamic Elec. Sys. Inc.</u>, No. 12 Civ. 100, 2012 WL 3043102, at *7-9 (E.D.N.Y. July 25, 2012).  Thus, plaintiff's hostile work environment claim fails as a matter of law.

## IV.  State Law Claims

As none of plaintiff's claims under federal law survive summary judgment, it is within this Court's discretion to exercise supplemental jurisdiction over the remaining state and municipal law claims.  28 U.S.C. § 1367(c)(3); <u>Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.</u>, 464 F.3d 255, 262-63 (2d Cir. 2006).

---

[18] The types of serious acts to which <u>Alfano</u> refers are fundamentally different from Taylor's remarks.  <u>See, e.g.</u>, <u>Richardson v. N.Y. State Dep't of Corr. Serv.</u>, 180 F.3d 426, 437 (2d Cir. 1999)(a single sexual assault).

In deciding whether to exercise supplemental jurisdiction over plaintiff's state law claims, courts are to balance the values of judicial economy, convenience, fairness, and comity. Klein & Co., 464 F.3d at 262 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

By resolving plaintiff's Title VII, ADA, and ADEA discrimination, retaliation, and hostile work environment claims, this Court has already effectively resolved plaintiff's NYSHRL claims as the substantive standards for liability under the statutory schemes are coextensive. See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006)(ADA); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)(ADEA);[19] Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997)(Title VII).  Thus, because the federal and NYSHRL claims "arise from the same set of operative facts and because the same legal standards apply to both, requiring Defendants to re-litigate [the NYSHRL] claims in state court would be neither fair nor convenient, nor would it serve the interest of judicial economy." Vuona v. Merrill Lynch & Co., 919 F. Supp. 2d 359, 393 (S.D.N.Y. 2013).  Accordingly, we exercise supplemental jurisdiction over

---

[19] While it remains an open question whether the "but for" standard articulated in Gross also applies to age discrimination claims under the NYSHRL, Mikinberg v. Bemis Co., 555 F. App'x 34, 35 (2d Cir. 2014), the Second Circuit has consistently assumed without deciding that it does.  See, e.g., Gorzynski, 596 F.3d at 106 n.6.

plaintiff's NYSHRL discrimination, retaliation, and hostile work environment claims and grant summary judgment to defendants on those claims.  Cf. McGarty v. City of N.Y., No. 12 Civ. 2813(NRB), 2014 WL 4626019, at *17 (S.D.N.Y. Sept. 16, 2014).

NYCHRL claims, by contrast, must be analyzed "separately and independently from any federal and state law claims." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).  A "more liberal" standard applies to those claims with "which the [New York] state courts are more familiar." McGarty, 2014 WL 4626019, at *17 (quoting Vuona, 919 F. Supp. 2d at 394)). Further, because discovery is complete and because the parties have already briefed the NYCHRL claims, the parties are "equipped to present th[ose claims] to a state court expeditiously."[20]  Martin v. Sprint United Mgmt. Co., No. 15 Civ. 5237 (PAE), 2017 WL 5028621, at *4 (S.D.N.Y. Oct. 31, 2017).  We therefore decline to exercise supplemental jurisdiction over plaintiff's NYCHRL claims and dismiss them without prejudice.  We reach the same conclusion with respect to plaintiff's claims for defamation per se and intentional infliction of emotional distress.

---

[20] New York's C.P.L.R. § 205(a) permits a plaintiff to recommence a suit that has been dismissed without prejudice within six months without regard to the statute of limitations.  See Trinidad v. N.Y.C. Dep't of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006).

**Conclusion**

Defendants' motions for summary judgment are granted with respect to plaintiff's claims under Title VII, the ADEA, the ADA, and the NYSHRL. This Court declines to exercise supplemental jurisdiction over plaintiff's remaining claims, i.e., those under the NYCHRL, and for defamation per se and intentional infliction of emotional distress. These claims, therefore, are dismissed without prejudice to plaintiff to refile in state court.

Dated:    New York, New York
          December 27, 2017

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE